UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARLENE JOHANSEN

Plaintiff

v.                                    Civil Action No. 04-11789-RCL

UNITED STATES OF AMERICA

Defendant

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS AND STRIKE COUNTERCLAIMS

I.  Procedural History.

The Plaintiff filed a quiet title action pursuant to 28 USCA Section 2410 on August 17, 2004. The United States answer to the complaint was filed with the Clerk's Office on or about on October 24, 2004. A copy of the answer was provided to Plaintiff's counsel electronically by the Court. The Answer includes "Counterclaims" against non-parties to this action and names a person without apparent relation to this matter. The Defendant also served the answer and related counterclaims upon Plaintiff's counsel on October 29, 2004.

II.  Facts.

The plaintiff, Marlene Johansen (hereinafter referred to as "Ms. Johansen") and Ralph Johansen were married on November 29, 1980.[1]

---

[1] The facts as stated herein are largely in the records provided from the Massachusetts Probate and Family Court and/or admitted by the Defendant.

1

On or about March 27, 1984, Marlene and Ralph Johansen bought 71 Pleasant Street in Stoneham, Massachusetts taking title as Tenants by the Entirety (the "Home").

Mr. Johansen filed for divorce on November 16, 1998.

On March 21, 2001 the Honorable Mary Anne Sahagian, Justice of the Massachusetts Probate and Family Court ruled (the "Ruling")(Please see Exhibit attached to the Plaintiff's Motion.) that the home had a value of $325,000. and was subject to encumbrances of a first mortgage with a balance of $144,648., as well as a second mortgage with a balance of $7,964.73.

The Ruling also found that Mr. Johansen had a liability to the Internal Revenue Service in the amount of $171,379. and the Massachusetts Department of Revenue of $28,333. (and an undetermined additional amount).

The Ruling held that:

The only real asset that the parties have, other than the Husband's defined benefit pension plan, is the marital home which has equity of approximately $172,387.00."
...
Unfortunately, the only asset available to the parties to address the enormous tax liability is the marital home. Accordingly, the home must be sold and proceeds used for this purpose.

Marlene Johansen filed a timely appeal of the Probate and Family Court's ruling and further filed a Motion for a Stay of the Divorce Judgment.

On June 7, 2001, Justice Dreben of the Massachusetts Appeals Court sitting as a single justice, issued an order stating:

2

On January 31, 2004 a Notice of Federal Tax Lien stating that Marlene Johansen was a Nominee of Ralph Johansen was recorded by the Commonwealth of Massachusetts' Registry of Deeds for Middlesex County (the "Nominee Lien").

II. <u>Law and Argument.</u>

1. <u>Standard for Dismissal.</u>

Dismissal of the Defendant's Counterclaims is appropriate only "[if] a trial court accepts plaintiff's facts and can envision no reasonable application of law that would entitle plaintiff to relief." <u>Finnern v. Sunday River Skiway Corp.</u>, 984 F.2d 530, 534 (1st Cir. 1993).

2. <u>The Non-Party Counterclaims.</u>

Rules 19, 20 and 21 of the Rules of Civil Procedure and Rule 15.1 of the Local Rules of the Federal District Court for the District of Massachusetts govern the addition of parties. The Defendant has failed to comply with the Court's rules. The non-party "Counterclaims" are properly stricken.

3. <u>The Counterclaims are Unsupportable as a Matter of Law.</u>

A. <u>The Defendant's Allegation that Susan M. Bertrand Holds Title is Unsupportable.</u>

The Defendant in response to the allegations of paragraphs 15 and 16 of the Plaintiff's Complaint admits that the subject property was transferred to the Plaintiff. There is no apparent connection to a Susan M. Bertrand in the chain of title. Presumably, the appearance of Ms. Bertrand in this matter is the result of a recycled counterclaim. The Defendant's request for relief is unsupportable. Further, even if one were to assume that

the Defendant's intended to state that the Plaintiff is holding the property as a nominee, the Defendant's allegation that the Plaintiff is holding property as a nominee for her ex-husband is devoid of rational thought. The Plaintiff was involved in a very contentious divorce with her ex-husband. Her ownership of the property occurred only after the Appeals Court for the Commonwealth of Massachusetts placed a stay on the Probate and Family Court's initial ruling and after a modified judgment was entered by the Probate and Family Court.

A nominee is one who holds bare legal title to property for the benefit of another. <u>Black's Law Dictionary (7th ed. 1999)</u>. <u>United States v. Webb</u>, 595 F.2d 203 (4th Cir. 1979).

The factors which have been considered in making the determination that a person is holding property for another are:

(1) no consideration or inadequate consideration paid by the nominee;
(2) property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property;
(3) close relationship between transferor and the nominee;
(4) failure to record conveyance;
(5) retention of possession by the transferor;
(6) exercise of dominion or control by the taxpayer; and,
(7) expenses of the property paid by the taxpayer.

Please see <u>United States v. Miller Brothers Construction Co.</u>, 505 F.2d 1031 (10th Cir. 1974); <u>Towe Antique Ford Foundation v. Internal Revenue Service</u>, 791 F. Supp. 1450 (D. Mont. 1992), aff'd without opinion, 768 F.2d 686 (5th Cir. 1985).

There is "no reasonable application of law" which would support the contention that the Plaintiff is holding the property as a nominee.

5

B. <u>Count Numbered I of the Counterclaim is Unsupportable as a Matter of Law.</u>

i. <u>The Property was Received for Adequate and Full Consideration.</u>

In its Count I the Defendant states:

42. Marlene Johansen did not acquire the legal title to the Property for adequate and full consideration in money or money's worth, and the Taxpayer did not receive reasonably equivalent value in exchange for the purported transfer of his legal title.

The Agreement and the Judgment are clear in that Mrs. Johansen exchanged her interest in her husband's pension for sole title to her home.

Massachusetts General Laws chapter 208 Section 34 governs the division of property in a divorce.

In <u>Heins v. Ledis</u>, 422 Mass. 477 (1996) the Supreme Judicial Court discussed the history and intentions of this statute.

> The court's power to award alimony and make an equitable division of property is wholly statutory. See <u>Gottsegen v. Gottsegen</u>, 397 Mass. 617, 621 (1986); Inker, *Alimony and Assignment of Property: The New Statutory Scheme in Massachusetts*, 10 Suffolk U.L. Rev. 1, 7 (1975).
> . . .
> The 1974 amendment to G. L. c. 208 gave courts the ability to award alimony to either a husband or wife, and to award either spouse's property to the other. St. 1974, c. 565, approved July 19, 1974. <u>Bianco v. Bianco</u>, 371 Mass. 420, 422 (1976). Allowing a court to divide the property was seen as a mechanism for recognizing the nonmonetary contribution of a spouse, usually the wife, to a marriage without the inherent limitation of alimony that it be only for "the amount necessary to support the wife in the manner of living to which she has been accustomed." Inker, supra at 8.
> . . .
> A judge has broad discretion when awarding alimony and dividing marital assets pursuant to G. L. c. 208, § 34 (1994 ed.).(fn2) <u>Drapek v. Drapek</u>, 399, Mass. 240, 243 (1987). <u>Rice v. Rice</u>, 372 Mass. 398, 400 (1977). <u>Bianco v. Bianco</u>, supra. The judge must consider fourteen mandatory factors set out in the third sentence of § 34, namely "the length of

the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, and the opportunity of each for future acquisition of capital assets and income." In addition, the judge may, in his or her discretion, consider "the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit." G. L. c. 208, § 34. Bowring v. Reid, 399 Mass. 265, 267 (1987). Drapek v. Drapek, supra.

. . .

General Laws c. 208, § 34, provides that "[i]n addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other." The concepts of alimony and property division have been historically viewed as separate and distinct. "The use of the words "in lieu of clearly indicates that something other than alimony was intended." Inker, Alimony and Assignment of Property: The New Statutory Scheme in Massachusetts, 10 Suffolk U.L. Rev. 1, 4--5 (1975). The two theories evolved in response to conceptually and practically distinct challenges in the development of family law. "Alimony is an award for support and maintenance and has historically been based on the common law duty of the husband to support his wife. Property division, on the other hand, is based on the joint contribution of the spouses to the marital enterprise." Id. at 11. See Heacock v. Heacock, 402 Mass. 21, 24 (1988) (property division serves different purpose than, and does not preclude, tort action for damages suffered during marriage). Property settlements are designed largely to effectuate a final and complete settlement of obligations between the divorcing spouses. While alimony is modifiable on the showing of a material change in circumstances, see G. L. c. 208, § 37 (1994 ed.), property settlements are not.

. . .

In making an equitable division of the parties' property, the judge had available for distribution "all or any part of the estate of the other." G. L. c. 208, § 34. A party's "estate" includes all property to which a party holds title, however acquired. Dalessio v. Dalessio, 409 Mass. 821, 825 (1991), S.C., 413 Mass. 1007 (1992). Drapek v. Drapek, 399 Mass. 240, 243 (1987).

In this matter the Probate Court and the Massachusetts' Appeals Court were fully aware of Mr. and Mrs. Johansen's assets and liabilities, including Mr. Johansen's tax liability.

7

("Northwest") from 1966 through 1994. During his employment, Francis participated in a retirement plan, a stock plan, and a savings plan administered by Northwest. Francis retired from Northwest in September of 1994, at which time he filed for divorce from Mary, his wife of more than thirty years. In October of 1994 a tax court concluded that Francis had not filed tax returns from 1981 through 1985. On May 1, 1995, the Service assessed deficiencies totaling approximately $984,310 (including penalties and interest) for those tax years. On July 28, 1995, the Texas court entered a divorce decree and approved a marital settlement agreement. The agreement provided that "to settle all obligations of the marriage," Mary would receive a 90 percent interest in Francis's Northwest employee benefits proceeds. Also in July, the court entered a purported qualified domestic relations order (QDRO), directing the plan administrator to distribute Mary's interest in the plan proceeds directly to her. The court retained jurisdiction to amend or reform the order as necessary to conform with plan requirements and qualify as a QDRO.

In October of 1995, Northwest informed Mary and Francis that the July QDRO did not qualify.

In December of 1995 and October of 1996 the Service filed liens against the plan proceeds.

The QDRO was reformed twice by the state court to address Northwest's concerns. Northwest finally accepted a QDRO in January of 1997.

9

The Court in its holding state as follows:

We turn next to whether Mary became a judgment lien creditor under section 6323(a) within sufficient time to have priority over the IRS. An IRS lien attaches automatically on the date a penalty is assessed, 26 U.S.C. section 6322 (lien arises at time of assessment), and is enforceable as of that date against creditors except any "purchaser," "holder of security interest," "mechanic's lienor," or "judgment lien creditor," within the meaning of section 6323(a). If the creditor falls into one of these categories, then the IRS must provide adequate notice to establish the priority of its lien. See 26 U.S.C. section 6323(a); Rodeck v. United States, 697 F. Supp. 1508, 1511 (D. Minn. 1988) (as to section 6323(a) creditors, tax lien will have priority only if notice has been filed in accordance with section 6323(f)).

A Treasury Regulation defines "judgment lien creditor" as follows:

. . . a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money... A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established.
. . .
A state law created lien's priority depends on when it attaches and becomes choate, and federal law will determine when the lien has acquired sufficient substance and becomes so perfected as to defeat a later federal tax lien. United States v. Pioneer Am. Ins. Co., 374 U.S. 84, 88 (1963). Liens are perfected, under the federal rule, when there is nothing more to be done to have a choate lien, that is, "when the identity of the lienowner, the property subject to the lien, and the amount of the lien are established." Id. at 89 (citations omitted). Here, Mary obtained a valid judgment from a Texas divorce court for 90 percent of Francis's plan proceeds creating an exclusive property interest in the plan proceeds for Mary. On the date the Texas court granted the DRO, Mary's identity was clear, the subject property was identified, and the amount (90 percent) was fixed.
Mary was not required to comply with any state law requirements for purposes of establishing lien priority over the IRS's interest in the plan proceeds. ERISA provides a mechanism for enforcing QDROs, and this mechanism supersedes any contrary state law. See U.S. Constitution art. VI, cl. 2,
. . .
In this case, Northwest determined, within eighteen months

10

of the date the first payment would have been made under the DRO, that the DRO, as modified, was a QDRO. Thus, Mary satisfied ERISA's requirements for alienating pension plan proceeds.

We further conclude that Mary's interest in the plan proceeds relates back to the date of the initial DRO. See Nelson v. Ramette, 322 F.3d 541, 544 (8th Cir. 2003)

The judgment in the Johansen's divorce entered and the Property was transferred eight months prior to the Service's filing of a Notice of Tax Lien. Ms. Johansen took the property free of any Federal Tax Lien.

C. Count Numbered II of the Counterclaim is Unsupportable as a Matter of Law.

The Defendant's second counterclaim alleges that a fraudulent conveyance occurred.

At the outset the conveyance occurred pursuant to a judgment of the court with jurisdiction over the divorce. The court had full knowledge of Mr. Johansen's tax issues. There is no apparent law to support the notion that a court can effectuate a fraudulent conveyance in circumstances such as present here.

i. The Conveyance was for Fair Value

The Defendant in its Counterclaim numbered II states as follows:

> 45. The purported transfer of the Taxpayer's interest in 71 Pleasant Street, Stoneham, Massachusetts was for $1.00 and other nominal consideration.
>
> 46. The purported transfer of the Taxpayer's interest for less than adequate consideration.

The Defendant in making these allegations had full knowledge

11

that they were inconsistent with the facts and the Probate Court's judgment.

Additionally, the Defendant does not allege what statute or jurisdiction which law governs this Counterclaim. Irrespective of the law upon which the Defendant's claim is based it necessary fails as it was the Courts of the Commonwealth of Massachusetts who ordered the transfer and determined that the property settlement between Mr. and Mrs. Johansen was equitable.

### iii. The Defendant's Counterclaims Were Prosecuted in Contravention of its Own Stated Policy.

The Plaintiff respectfully asks that the Court note that the Defendant's actions herein are diametrically inapposite to the Notice which the Service issued in response to the Supreme Court's decision in <u>United States v. Craft</u>, 535 U.S. 274 (2002).

<u>Notice 2003-60</u>, 2003-39 I.R.B. 643, the Service stated as follows:

> On April 17, 2002, the Supreme Court issued its decision in <u>United States v. Craft</u>, 535 U.S. 274 (2002) (2002-38 I.R.B. 548), and held that the federal tax lien that arises under section 6321 of the Internal Revenue Code on "all property and rights to property" of a delinquent taxpayer attaches to the rights of the taxpayer in property held as a tenancy by the entirety (entireties property), even though local Michigan law insulates entireties property from the claims of creditors of only one spouse. The Court stated that while state law determines what rights a taxpayer has in property, federal law determines whether the state-defined rights are "property" or "rights to property" for purposes of section 6321. The Court's decision in Craft has consequences in the approximately twenty-six jurisdictions that recognize tenancy by the entirety as a form of property ownership.
>
> While state law governing property ownership varies by jurisdiction, there are a number of principles generally applicable to a tenancy by the entirety. Tenancy by the entirety is a form of property ownership, including personal property in some jurisdictions, available only to a husband

12

and wife as a marital unit. A key feature of the tenancy is the right of survivorship -- the surviving spouse becomes the fee simple owner of the property upon the death of the other spouse. The tenancy also is terminated by the transfer of the property or upon the spouses' divorce.

Entireties property is subject to the claims of the joint creditors of the spouses. However, the majority of jurisdictions that recognize tenancy by the entirety, so-called full bar jurisdictions, completely prohibit creditors from attaching entireties property to satisfy the debts of only one spouse. The state law rationale is that a spouse individually has no interest in the property; rather, the property is held by the marital unit. The other jurisdictions that recognize tenancy by the entirety, so-called modified or partial bar jurisdictions, permit creditors to attach one spouse's interest in entireties property for the debts of only that spouse, subject to the rights of the non-liable spouse.

. . .

DIVORCE. A spouse of the taxpayer who obtained entireties property in a divorce acquires the property subject to the federal tax lien. In the context of a divorce, a spouse is not in the class of persons protected by section 6323(a). Consequently, if the assessment giving rise to the federal tax lien under section 6321 had occurred prior to the divorce, then the lien also attached to the taxpayer's rights in the entireties property. As a general rule, if the transfer occurred before Craft, then the Service will treat the transfer as one for value and will not assert its lien against the property in the hands of the ex-spouse of the taxpayer. This will not apply if the Service determines that, notwithstanding the divorce, the transfer was fraudulent.

Here the conveyance was not fraudulent. The Service's lien was filed in direct contradiction of its stated policy.

III. <u>Conclusion.</u>

The Defendant's Counterclaims are properly dismissed.

13

Marlene Johansen
by her attorney

_____
Timothy J. Burke
BBO# 543837
400 Washington Street
Braintree, MA    02184
(781) 380-0770

Dated: November 8, 2004

## Certificate of Service

I hereby certify that a true copy of the above document was served upon each attorney of record via first class mail, postage prepaid on November 8, 2004 to the following counsel of record:

Stephen Turanchik
Trial Attorney, Tax Division
Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C.    20044

_____
Timothy J. Burke

14

# EXHIBITS

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
PROBATE AND FAMILY COURT DEPARTMENT

MIDDLESEX DIVISION  NO. 98D-4536-DV1

RALPH JOHANSEN
    Plaintiff/Defendant-in-Counterclaim

NOTICE OF APPEAL

V.

MARLENE JOHANSEN,
    Defendant/Plaintiff-in-Counterclaim

TO THE REGISTER OF THE ABOVE NAMED COURT:

Notice is hereby given that the Defendant/ Plaintiff-in-Counterclaim, Marlene Johansen, appeals to the Appeals Court from Mary Anne Sahagian's Judgments of Divorce Nisi dated March 21, 2001. Specifically, the Defendant/Plaintiff-in-Counterclaim appeals from paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 20, of each of the said Judgments of Divorce and which were previously, timely and properly appealed.

Defendant/Plaintiff-in-Counterclaim also appeals from Mary Anne Sahagian's denial of Defendant/Plaintiff-in-Counterclaim's Rule 59 Motion to Alter and Amend the March 21, 2001 said Judgments of Divorce, which was denied by the Court on April 23, 2001. Further to the extent necessary, if any, the Defendant/Plaintiff-in-Counterclaim prophylactically reasserts and affirms her prior Notice of Appeal.

MIDDLESEX, SS
PROBATE COURT
A TRUE COPY ATTESTED
John R. Buonomo
REGISTER

FILED  JUN 1 2 2001

Respectfully submitted,
Defendant/Plaintiff-in-Counterclaim
Marlene Johansen
By her Attorney,

*[signature]*
Edward M. Mahlowitz
BBO #314360
385 Concord Avenue, Suite 101
Belmont, MA 02478
(617) 489-0909

## CERTIFICATE OF SERVICE

I, Edward M. Mahlowitz, do hereby certify that I have this day served a copy of the foregoing Notice of Appeal by first class mail, postage prepaid upon the attorney of record for the Plaintiff/Defendant in Counterclaim, Phyllis K. Kolman, Esquire, Benjamin & Benson, 43 Thorndike Street, Cambridge, MA 02141-1717.

Signed under the pains and penalties of perjury on May 15, 2001.

*[signature]*
Edward M. Mahlowitz
385 Concord Avenue, Suite 101
Belmont, MA 02478
(617) 489-0909

2

MIDDLESEX, SS
PROBATE COURT
A TRUE COPY ATTESTED
*John R. Buonomo*
REGISTER