UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARLENE JOHANSEN, | ) |
| | ) |
| Plaintiff, | ) |
| Counterclaim Defendant, | ) |
| | ) Case No. 04-11789-RCL |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant, | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NATIONAL CITY MORTGAGE CO., | ) |
| and TIMOTHY BURKE, | ) |
| | ) |
| Counterclaim Defendants. | ) |

MEMORANDUM OF LAW IN SUPPORT OF THE
UNITED STATES' MOTION FOR SUMMARY JUDGMENT

The United States of America submits this memorandum of law in support of its Motion for Summary Judgment.

I. PROCEDURAL HISTORY

On August 17, 2004, Marlene Johansen ("Marlene") filed this Complaint seeking to quiet title to 71 Pleasant Street, Stoneham, Massachusetts ("the Subject Property"). On October 18, 2004, the United States answered the Complaint and filed a Counterclaim seeking to foreclose its federal tax liens against the Subject Property. The federal tax liens arose because of unpaid

federal income tax liabilities of Ralph Johansen ("Ralph"), Marlene's ex-husband. The United States counterclaimed against Marlene, National City Mortgage Company and Timothy Burke. National City and Timothy Burke[1]/ were named because they hold mortgages against the subject property.

Marlene moved to dismiss and strike the United States' counterclaim on November 8, 2004. Timothy Burke also filed a motion to dismiss the counterclaims of the United States on January 26, 2005. The Court referred both Marlene's and Mr. Burke's motions to dismiss to Magistrate Judge Collings. On July 14, 2005, Magistrate Judge Collings recommended that both Marlene's and Timothy Burke's motions to dismiss be denied. No objections to the Report and Recommendation have been filed to date.

National City Mortgage Company and the United States filed a stipulation on May 4, 2005, that was endorsed by the Court on May 20, 2005. The stipulation provides that National City Mortgage Company has priority over the federal tax lien on the Subject Property. National City Mortgage Company, therefore, should have no involvement in this case, until foreclosure.

On December 15, 2004, Ralph Johansen filed a motion to intervene in this case which was opposed by the United States. That motion was referred to Magistrate Judge Collins, who, on June 2, 2005, recommended that Ralph Johansen's motion to intervene be denied. The Court has denied Ralph's objection to the recommendation of the Magistrate Judge.

The United States now files for summary judgment because there are sufficient facts which are not in dispute which entitle the United States to judgment.

---

[1]/ Timothy Burke is also Marlene's attorney in this matter, but is named individually because he holds a mortgage on the property.

II. STATEMENT OF MATERIAL FACTS PURSUANT TO LR 56.1

1. Ralph and Marlene married in 1980. (Exhibit 1, Marlene Deposition Transcript p.38).

2. Ralph Johansen began working for the Canadian government in approximately 1973. (Exhibit 2, Ralph Deposition Transcript pp. 20-21). Ralph has worked for the Canadian government in a variety of roles within the tourism department until the present time. (Ralph Tr. pp. 13-20).

3. During the mid to late 1990s, Ralph earned in excess of $60,000 per year. (See Ex. 3, Statements from Canadian Consulate General).

4. During their marriage Marlene worked in a variety of positions including owner/operator of a convenience store (1980-86), temporary service placement employee (1986-92), diet counselor/manager (1992-1999), dating service employee (1999-2000), travel consultant (2000-2002), and administrative assistant in a doctor's office (2002-2003). (Marlene Tr. pp. 20-36).

5. Aside from earning $25,000 per year as a travel consultant, Marlene has never earned more than $20,000 per year. (Marlene Tr. p. 34).

6. During their marriage Ralph was the primary breadwinner. (Ralph Tr. p.33).

7. Marlene and Ralph resided at the Subject Property on Pleasant Street since 1978 and bought the property in 1985. (Marlene Tr. p.35).

8. At first, Marlene and Ralph filed joint federal income tax returns when they were married. (Marlene Tr. pp.46-47). The Johansens continued to file joint tax returns until 1994. (Ralph Tr.p.30).

9. In October or November 1997, Marlene received correspondence from the Internal

Revenue Service regarding unpaid income taxes from the early 1990s. (Marlene Tr. p.54) After receiving the letter Marlene confronted Ralph who admitted that he had not been paying their taxes.2/ Id.

10. Ralph moved out of the subject property in 1997 . (Marlene Tr. p.61) Even after Ralph moved out of the house he continued to pay for expenses of the household. (Ralph Tr. p.59).

11. A Complaint for divorce was filed by Ralph with the Middlesex Division of the Probate and Family Court on December 4, 1998. (See Exhibit 4, Complaint for Divorce).

12. Prior to trial, Ralph wanted the Subject Property sold and "the net proceeds utilized in the first instance to pay their outstanding joint tax liabilities for prior years, with [Marlene] amending her 1998 and 1999 filing to joint returns and receiving credit for any taxes paid by her in those years." See Exhibit 4, Ralph's Pre-trial Memorandum, p.3, dated October 2, 2000, in Johansen v. Johansen, 98-D-4536-DV1.

13. On January 26, 2001, a trial was held in the divorce proceedings of Johansen v. Johansen, at the Middlesex County Probate and Family Court. (See Exhibit 7, Findings of Fact on Complaint for Divorce, dated March 21, 2001.)

14. In his proposed Findings of Fact, Ralph argued, "In order to pay the tax liability ... it is unfortunate but inescapable that the Stoneham house must be sold and the proceeds used for this purpose. The wife received a significant portion of the income that resulted from the non-payment of their taxes, and was aware of the fact that the returns were not being filed and the

---

2/   The tax liabilities owed by the Johansens from the tax years of the early 1990s are no longer due and owing. Rather, Ralph Johansen's liabilities relate to the tax years 1995-2000 which were not assessed until 2001.

taxes not being paid." See Exhibit 5, Proposed Findings of Fact, submitted by Ralph.

15.  After the trial the Probate Court issued a Judgment of Divorce Nisi and Findings of Fact and Conclusions of Law, dated March 21, 2001 (Exhibits 6 and 7).

16.  In determining the assets and liabilities of each spouse the Probate Court found that Ralph Johansen had unpaid tax liabilities to the Commonwealth of Massachusetts in the amount of $28,333 and to the Internal Revenue Service of $171,379. (Exhibit 7, p. 4).

17.  The Probate Court agreed with Ralph's arguments that Marlene benefitted from Ralph's earnings and that Ralph's "income which would otherwise have been used to pay the parties' tax liability was instead used to support the parties' lifestyle.  Since [Marlene] benefitted financially from [Ralph's] income during this period, while aware that income taxes were not being paid, she must share the responsibility for paying the income tax debt through tax year 1998." (Exhibit 7, pp. 6-7).

18.  In the Judgment of Divorce Nisi, the Probate Court ordered the Subject Property sold to pay the tax liabilities.  (See Ex. 6, p.1).

19.  Marlene disagreed with the decision of the Probate Court and filed an appeal on April 27, 2001. (Exhibit 8, Notice of Appeal).

20.  On June 7, 2001, the portion of the Judgment of Divorce Nisi that ordered the sale of the Subject Property was stayed pending Marlene's appeal.  (See Exhibit 10, Order, dated June 7, 2001.)

21. A delegate of the Secretary of the Treasury made assessments against the Taxpayer for his unpaid federal tax liabilities as follows:

| Tax Year | Tax Type | Assessment Date | Balance Due as 1/27/2004 |
|---|---|---|---|
| 1995 | Income | 5-14-2001 | 32,866.16 |
| 1996 | Income | 6-4-2001 | 29,435.22 |
| 1997 | Income | 5-21-2001 | 36,820.51 |
| 1998 | Income | 4-30-2001 | 51,836.15 |
| 1999 | Income | 4-30-2001 | 19,286.58 |
| 2000 | Income | 5-28-2001 | 14,559.02 |
|  |  |  | 184,803.64 |

See Declaration of Debt of John Carroll, Exhibit 10 and Forms 4340 Certificates of Assessment and Payment, for the years 1995 through 2000, Exhibit 11.

22. In May and June 2001, the Internal Revenue Service made demands for payment from Ralph of his 1995-2000 tax liabilities. Further, those demand letters were forwarded by Marlene's counsel, Ed Mahlowitz, to Marlene on June 8, 2001. See Exhibit 12, Letter from Edward M. Mahlowitz to Marlene Johansen, dated June 8, 2001, and attached notices from the IRS.

23. On December 24, 2001, Ralph and Marlene entered an Agreement that became part of a Modification Judgment. The Modification Judgment and Agreement are attached as Exhibit 13.

1258372.1

24. The Agreement, dated December 24, 2001, provided that:

> 2. Ralph shall forthwith execute a quitclaim deed transferring all of his interest in the former marital home located in Stoneham to the wife. ...
>
> 4. Commencing forthwith ... Ralph Johansen shall commence paying Marlene Johansen the sum of $400.00 per week as alimony, taxable to her and deductible by him on their tax returns, payable until the earlier of the death of either party or remarriage of Marlene Johansen.
>
> 5. Marlene Johansen hereby waives her claim to any portion of the Husband's retirement including any claim to all income Ralph Johansen shall derive therefrom in future and/or value accrued post-divorce ....
>
> 6. Ralph Johansen shall be solely responsible for payment of taxes, interest, and penalties to the IRS and/or DOR due as a result of his non-filing of tax returns for the years set forth in the divorce judgment ... and he shall hold harmless Marlene Johansen for any liability as a result of said returns.
>
> See Exhibit 13, Modification Order and Agreement.

25. Marlene's appeal of the Judgment of Divorce Nisi was then dismissed on January 8, 2002.  See Exhibit 14, Order endorsing Stipulation of Dismissal of Appeal.

26. On December 9, 2002, a quitclaim deed was recorded with the Registry of Deeds whereby Ralph purported to convey his one-half interest in the Subject Property to Marlene. (See Exhibit 15, Deed).

27. On December 18, 2002, a Notice of Federal Tax Lien on the property of Ralph Johansen was recorded by the Commonwealth of Massachuset's Registry of Deeds for Middlesex County.  (See Complaint ¶17 and Exhibit 16).

28. The United States filed a Notice of Federal Tax Lien on January 21, 2004, against Marlene Johansen as Nominee of Ralph Johansen.  (See Exhibit 17.)

29. On or about February 11, 2004, Marlene Johansen gave a mortgage on the property to National City Mortgage Company in the amount of $139,300.00.3/

30.  On or about August 13, 2004, Marlene Johansen gave a mortgage on the property to Timothy Burke, Esq. (See Exhibit 18).

### III. ARGUMENT

A.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is to be awarded to a party entitled to judgment as a matter of law. On such motion, the Court is not to ascertain facts; rather, the Court is only to determine whether there are any material facts in dispute.  "[T]he motion will not be defeated merely upon a metaphysical doubt concerning the facts or on the basis of conjecture or surmise."  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, the non-movant is obligated to provide concrete evidence establishing the existence of a genuine issue of material fact.  See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).  Rule 56(e) of the Federal Rules of Civil Procedure

---

3/   As set forth in the stipulation between National City Mortgage Company and the United States, National City Mortgage Company is entitled to priority over the federal tax lien.  The parties agreed that National City Mortgage was entitled to equitable subrogation.

provides that when a motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits ... must set forth specific facts showing that there is a genuine issue for trial."  In this case, there is no dispute as to the facts as set forth above.  Rather, the only question is the application of those facts to law.4/

B.   Marlene Johansen Acquired Ralph Johansen's One-Half Interest in the Marital Home Subject to the Federal Tax Lien 5/
`
Under 26 U.S.C. § 6321, the failure of any person to pay a tax liability after demand creates a lien upon that person's property. The lien arises "at the time the assessment is made." 26 U.S.C. § 6322.  Generally speaking, such lien takes precedence over all other interests in the property. See United States v. V & E Engineering & Constr. Co., 819 F.2d 331, 335-36 (1st Cir.1987).  This general tax lien is perfected as to the taxpayer without the filing of a Notice of

---

4/   The United States also possesses sufficient facts to establish that the purported conveyance of Ralph Johansen's one-half interest in the Subject Property was fraudulent as to United States.  In particular, the following factors of Mass. G.L. ch. 109A §5 support a finding that the conveyance was made with the intent to hinder, defraud or delay the collection of his federal tax liabilities: (1) the conveyance was made to his wife, (2) before the transfer was made, the debtor was threatened with suit, (3) from the perspective of the IRS, the value of the assets received by Ralph was not equivalent to the value of the assets exchanged, (4) the transfer occurred shortly after a substantial debt was incurred, and (5) Ralph was insolvent before and after the transfer.  Additionally, the fact that a court determined that the property settlement was valid as between the parties to it does not prohibit a creditor from attacking the settlement as being fraudulent as to it.  See Snodgrass v. Baumgart, 974 P.2d 604 (Kan.App.1999); Filip v. Burucenciu, 129 Cal.App.4th 825 (2005);  Dowell v. Dennis, 998 P.2d 206 (Okla.Civ.App.Div. 1999); Glasscock v. Citizens National Bank, 553 S.W.2d 411 (Tex.Civ.App.1977)( creditors could not be bound by a divorce decree because the court in a divorce action has no authority to disturb a creditor's lawful rights against a party to the divorce or to award property to the creditor's prejudice). Because, we believe, it is not necessary for the United States to establish a fraudulent conveyance to entitle the United States to foreclose and because questions of fact regarding the validity of the transfer may be present, the United States does not move for summary judgment on the fraudulent conveyance issue, but, rather identifies this issue for the Court in the unlikely event that the United States' Summary Judgment Motiont is denied.

5/   For purposes of this motion, the United States assumes that the transfer was valid, however, the United States believes as stated in footnote 4, that it can prove a fraudulent conveyance of the Subject Property.

Federal Tax Lien. However, before a tax lien will be effective against certain third parties, a Notice of Federal Tax Lien must be recorded. Specifically, I.R.C. § 6323(a) provides that the lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) is filed. See United States v. Pioneer American Ins. Co., 374 U.S. 84, 88 (1963).

In this case, the tax liens arose on the various assessment dates in April, May and June 2001.6/ At that time, Marlene and Ralph owned the Subject Property jointly. On December 9, 2002, Ralph's one-half interest was transferred to Marlene. However, notice of the federal tax lien was not recorded until December 18, 2002, nine days after the conveyance to Marlene.

Therefore, whether the liens may be enforced against the property now owned by Marlene turns on whether her interest falls within one of the four exceptions enumerated in § 6323. Since Marlene is unquestionably neither a mechanic's lienor nor the holder of a security interest in the property, she would be entitled to relief under § 6323(a) only if she qualifies as a purchaser or judgment lien creditor. See United States v. Brynes, 848 F.Supp. 1096 (D.R.I.1994); In re Suarez, 182 B.R. 916 (Bankr.S.D.Fla. 1995).

Taxes are the lifeblood of government. See Bull v. United States, 295 U.S. 247, 259 (1935). Section 6321 of the Internal Revenue Code is general and peremptory and the exceptions permitted under § 6323 are carefully crafted and narrowly limited. See In re Berg, 121 F.3d 535, 537 (9th Cir. 1997).

---

6/ Certificates of Assessment and Payments, Forms 4340, Ex. 11, constitute presumptive proof that a valid assessment has been made, and that notice and demand for payment was given, as to those assessments listed. See Geiselman v. United States, 961 F.2d 1, 6 (1st Cir. 1992).

1258372.1

1. <u>Marlene Does Not Qualify as a Purchaser</u>

Marlene is not a purchaser under §6323 because she had actual knowledge of Ralph's tax liabilities and because she only parted with a marital right which is not consideration. Internal Revenue Code section 6323(h)(6) defines a "purchaser" as follows:

> The term "purchaser" means a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice.

The Treasury Regulation interpreting section 6323(h)(6) states that, for purposes of tax liens, "[a] relinquishing or promised relinquishment of ... marital rights is not a consideration in money or money's worth." <u>See</u> <u>Herzog v. United States</u>, 201 F.3d 444 (9th Cir. 1999)(<u>citing</u> 26 C.F.R. § 301.6323(h)-1(a)(3)(1992)); <u>see also</u> <u>Harris v. United States</u>, 764 F.2d 1126 (5th Cir. 1985)("the division of property by the divorce court was a division of marital property rights, not a sale"); <u>In re Suarez</u>, 182 B.R. 916 (Bankr. S.D.Fla.,1995); <u>United States v. Brynes</u>, 848 F.Supp. 1096, 1098 (D.R.I. 1994). Marlene Johansen possessed a claim to Ralph Johansen's pension because of their marriage. <u>See</u> Mass. G.L. ch. 208 §34. ("Upon divorce ... the court may assign to either husband or wife ... all vested and nonvested benefits, rights and funds accrued during the marriage and which shall include, but not be limited to, retirement benefits ...") As a result, Marlene Johansen only relinquished her claim to her marital rights. Therefore, Marlene did not provide "consideration" as defined in IRC §6323, and cannot qualify as a purchaser.

Additionally, section 6323(h)(6) requires that a purchaser lack actual knowledge of the seller's tax liabilities. Section 6323(h)(6) defines a purchaser is "a person who, for adequate and

full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers <u>without actual notice</u>." (emphasis added).  <u>See also</u> <u>United States v. Hughel</u>, 20 F.Supp.2d 1154 (S.D.Ohio 1997); <u>Fritschler, Pellino, Schrank & Rosen, S.C. v. United States</u>, 716 F.Supp. 1157 (E.D.Wis. 1988) ; <u>Gallup v. United States</u>, 358 F.Supp. 776, 779 (D.Neb. 1973)(§ 6323(b)(2) does not refer to actual knowledge of the filing of the notice of the tax lien, but requires instead that the purchaser be free of actual knowledge of the existence of the lien).  There is no dispute that Marlene had knowledge of Ralph's tax liabilities before any transfers.  On June 8, 2001, Marlene's lawyer, Edward Mahlowitz, provided Marlene with the notices that the IRS had sent to Ralph setting forth his tax liabilities.  <u>See</u> Ex. 12.  Additionally, the Probate Court made findings in its decision of March 21, 2001, that Ralph had substantial tax liabilities.  <u>See</u> Exs. 6 & 7. Consequently, before any purported transfer of the Subject Property, Marlene knew that Ralph had unpaid tax liabilities, that the IRS had made demand for payment, and that those liabilities remain unpaid.   As a result, Marlene cannot qualify as a "purchaser" under 26 U.S.C.§ 6323.

    2. <u>Marlene Does Not Qualify as Judgment Lien Creditor</u>

Treasury regulations define a "judgment lien creditor" as a "person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money." 26 C.F.R. § 301.6323(h)-1(g).  The regulations further provide that a judgment lien must be perfected and that perfection does not occur until "the property subject to the lien, and the amount of the lien are established." <u>Id.</u>; see <u>United States v. New Britain</u>, 347 U.S. 81, 84 (1954).  In the case of real property, the

regulations state:

> If recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property, a judgment lien under such local law is not perfected with respect to real property until the time of such recordation or docketing. 26 C.F.R. § 301.6323(h)-1(g).

Marlene fails to qualify as a judgment lien creditor because (1) she did not hold a lien against the property (2) her interest was not perfected and (3) here interest was not choate.

### a) Marlene Is Not a Lien Holder

To decide if Debtor has a "judicial lien," the Court must first decide if the Modification Order, dated December 24, 2001, created a "lien" at all.  See In re Suarez, 182 B.R. 916, 922 (Bankr. S.D.Fla. 1995)(citing  In re Elkhatib, 108 B.R. 650 (Bankr. N.D.Ill.1989).  Black's Law Dictionary defines a "lien" as a claim, encumbrance, or charge on property for payment of some debt, obligation or duty.  See Black's Law Dictionary, (6th ed. 1990).  A divorce decree has the effect of either extinguishing or reordering pre-existing property interests of the parties and creating new interests in the place of the old.  In re Suarez, 182 B.R. 916, 922 (Bankr. S.D.Fla. 1995)(citing In re Wells, 160 B.R. 726 (Bankr.N.D.N.Y.1993)); see also Farrey v. Sanderfoot, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991); In re Steffen, 1992 WL 308378 (Bankr. N.D.Iowa May 12, 1992).

Likewise in Massachusetts, the division of property in a divorce has been likened to the division of partnership assets.  Massachusetts General Law ch. 208 §34 provides, "Upon divorce ... the court may assign to either husband or wife ... all vested and nonvested benefits, rights and funds accrued during the marriage and which shall include, but not be limited to, retirement

benefits ..." The purpose and effect of Mass. G.L. ch. 208 § 34 is to provide "the equitable division of the property interests of partners in a marriage." Davidson v. Davidson, 474 N.E.2d 1137, 1138 (Mass.App. 1985) ; Rice v. Rice, 361 N.E.2d 1305 (Mass. 1977).  As the Appellate Court in Davidson, 474 N.E.2d 1137, n.7, reasoned:

> Chief Justice Hennessey, the author of Rice, later commented: "In practical effect, the court [in Rice ] in a liberal interpretation of [§ 34], treated the marriage as an implied partnership for the purposes of distribution of property. As in the case law dealing with family operated small businesses, the Rices' marriage could be viewed as a pooling of resources, a co-ownership of the property brought to the marriage and acquired later." citing Hennessey, Explosion in Family Law Litigation, Challenges and Opportunities for the Bar, 14 Family L.Q. 187, 189 (1980).

Consequently, Massachusetts divorce law does not contemplate that liens will arise in the equitable division of property.  Rather, as the Court in Suarez concluded, the reordering of pre-existing property interests of the parties does not create a "lien" at all.  Suarez, 182 B.R. at Therefore, Marlene did not have "lien" and cannot qualify as a judgment lien creditor under §6323 to defeat the federal tax lien.

### b) *Marlene Johansen Did Not Perfect Her Claim as a Judgment Creditor*

Even assuming that Marlene held a lien, it was not perfected.  Under Massachusetts law, in order to perfect a judgment lien against real property, the creditor must file an execution with the Registry of Deeds where the real property is located. "A  Massachusetts judgment alone is not sufficient to create a perfected and choate judgment lien." See Smith Barney, Harris Upham & Co., Inc. v. Connolly, 887 F.Supp. 337, 345 (D.Mass. 1994).   Massachusetts General Laws ch. 236 §4 provides:

> If land, which was not attached on mesne process in the action in which the execution issued, is taken on execution, the officer shall forthwith deposit in the registry of deeds for the county or district where the land lies a copy of the execution with a memorandum thereon that the execution is in his hands for the purpose of taking the land of the defendant, and no such taking shall be valid against a purchaser in good faith, for value and without notice, before such copy is deposited.

In this case, there is no indication that Marlene obtained an execution, let alone recorded one with the Registry of Deeds. Therefore, she cannot claim that she perfected her judgment lien.

### c) Marlene Johansen's Claim Is Not Choate

Even if Marlene Johansen's divorce decree were perfected, her claim must be choate in order to defeat the federal tax lien. A lien is inchoate if it is not specific or is not perfected. A competing, non-federal lien to be perfected must be definite in three respects:

(1) the identity of the lienor,
(2) the property subject to the lien, and
(3) the amount of the lien.

See United States v. New Britain, 347 U.S. 81, 84 (1954); United States v. Pioneer American Insur. Co., 374 U.S. 84, 89 (1963). Additionally to be choate, a lien must be definite at the critical time, and not merely ascertainable in the future by taking further steps. Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 374 (1946). Under facts similar to this case, the Court in In re Suarez, 182 B.R. 916, 922 (Bankr. S.D.Fla. 1995), stated:

> even if the Court determined the Final Order obtained in the divorce proceedings created a lien, it would not have the choateness necessary to allow it priority over the federal tax lien. The fact that a lien was perfected before a federal tax lien was recorded does not necessarily entitle it to priority over the federal tax lien. To enjoy priority, the previous lien also must be sufficiently choate under federal law." United States v. Brynes, 848 F.Supp. 1096 (D.R.I.1994); see also, United

> States v. New Britain, 347 U.S. 81 (1954). The concept of choateness relates to the specificity and identifiability of a lien. Liens "may also be perfected in the sense that there is nothing more to be done to have a choate lien--when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." New Britain, 347 84. Here the Final Order would not have the choateness necessary to allow it priority over the federal tax lien because the amount of the lien is not established. Nor could it ever be established since there is no debt to be secured by a lien, just the redistribution of an interest in property.

There is no debt owed from Ralph to Marlene because the Modification Agreement of December 24, 2001, merely re-ordered the property interests of Ralph and Marlene. As such, there is no "amount" due from Ralph to Marlene, and therefore, Marlene's claim against Ralph was not choate. Consequently, Marlene cannot qualify as a judgment lien creditor.

<u>Conclusion</u>

Because the federal tax liens arose prior to the transfer of Ralph's one-half interest in the Subject Property and attached to his one-half interest in the property in April, May and June 2001, Marlene took Ralph's share of the property subject to those tax liens. Further, because Marlene does not qualify as a "purchaser" or a "judgment lien creditor" under 26 U.S.C. §6323, she cannot defeat the federal tax liens.

MICHAEL J. SULLIVAN
United States Attorney

/s/ Stephen J. Turanchik
_____
STEPHEN J. TURANCHIK
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55 Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6565
stephen.j.turanchik@usdoj.gov

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing United States' Motion for Summary Judgment and Supporting Memorandum of Law has been made upon the following by depositing a copy in the United States mail, postage prepaid, this 29th day of July, 2005:

Timothy J. Burke
400 Washington Street, Suite 303
Braintree, MA 02184

D. Sean McMahon
Meilman & Costa
70 Wells Avenue, Suite 200
Newton, MA 02459

/s/ Stephen J. Turanchik

STEPHEN J. TURANCHIK
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6565