COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS                                    PROBATE AND FAMILY COURT
                                                 DOCKET NO.: 98D-4536-DV1

```
                                    )
RALPH JOHANSEN                      )
      Plaintiff,                    )
                                    )
V.                                  )
                                    )
MARLENE JOHANSEN                    )
      Defendant.                    )
                                    )
```



## FINDINGS OF FACT

A.   **PROCEDURAL HISTORY**

1. The husband filed a Complaint for Divorce on December 4, 1998, in the Middlesex Division of the Probate and Family Court Department, Docket No. 98D-4536-DV1.

2. The wife filed an answer and counterclaim on January 21, 1999 in the Middlesex Division of the Probate and Family Court Department, Docket No. 98D-4536-DV1.

3. The grounds for the original complaint are irretrievable breakdown of the marriage pursuant to MGL c.208§1B.

4. The grounds for the counterclaim are irretrievable breakdown of the marriage pursuant to MGL c.208§1B.

5. The wife filed Motions for Temporary Support and for Provision of an Automobile on March 8, 1999. On April 9, 1999, Judge Gibson ordered the Husband:

   a.   to pay alimony of $515.00 per week to the wife;
   b.   to maintain her on his health insurance;
   c.   to maintain the wife as beneficiary of his life insurance;
   d.   to do all things necessary to enable the wife to lease a new vehicle and to pay for any fees due at the lease renewal or inception, after which the wife was responsible for all lease payments and regular operating expenses.

B.  **BASIC FACTUAL INFORMATION**

6. The husband and wife were married at Boston, Massachusetts on November 29, 1980.

7. This is the second marriage of the wife.

8. This is the first marriage of the husband.

9. There have been no children of the marriage. However, the Wife's daughter from her first marriage lived with the parties.

10. The parties last lived together at Stoneham, Massachusetts on or about October 13, 1997.

11. The wife resides at 71 Pleasant Street, Stoneham, Massachusetts, 02180.

12. The husband resides at 5 Snakebrook Road, Wayland, Massachusetts, 01778.

C.  **AGE**

13. The wife was born on January 31, 1949 and is 52 years of age.

14. The husband was born on February 1, 1948 and is 53 years of age.

D.  **HEALTH**

15. The wife's health is good.

16. The husband's health is good.

E.  **STATION**

17. The parties' station in life when they last lived together was middle income.

18. The wife's current station in life is middle income.

19. The husband's current station in life is middle income.

F.  **VOCATIONAL SKILLS, OCCUPATION, INCOME, EMPLOYMENT**

20. The wife has a high school diploma and is employed by National Leisure Group as a travel agent with gross income per week of $462.00 and net income per week of $348.00. The wife also receives income from rent of $92.00 per week, in addition to alimony of $515.00 per week. Wife's gross income from employment received during 2000 was approximately $18,000.00, exclusive of alimony. The wife has worked as a bank branch manager, owner/operator of a neighborhood convenience store, consultant in the diet industry

:NJAMIN & BENSON
)UNSELLORS AT LAW
BULFINCH SQUARE
THORNDIKE STREET
!BRIDGE, MA 02141-1717
(617) 577-1515

2

and, dating service business, and as a travel agent. She has vocational skills as a salesperson which are commensurate with the above and her employability is good.

21. The husband has a B.S. Degree from Eastern Nazarene College, Quincy, Massachusetts and has been for 27 years an executive in charge of developing tourism business for Canada. His gross income per week is $1,363.46; and net income per week of $833.01. The husband's gross income received during 2000 was approximately $71,000.00, after deducting his self-employed business expenses from income of $85,347.67. His vocational skills are as a salesperson and executive and commensurate with the above. His employability is good.

G. ESTATE

22. The former marital home was purchased in 1984 for $125,000.00 and has a current fair market value of $325,000.00.

23. The wife drives a leased motor vehicle. She values the house contents and her jewelry at $2,500.00.

24. The husband drives a 2000 Dodge Caravan motor vehicle standing in the name of Ralph Johansen which has a fair market value of $15,130.00 and an auto loan of $17,568.46, for a negative equity $-2,438.46. He has no other tangible property of any value.

25. The wife has the following intangible property:

> John Hancock IRA of $2,400.00.

26. The husband's intangible personal property is:

| | |
|---|---|
| Sovereign Bank Account, | $ 5,769.13 |
| John Hancock IRA, | 14,883.73 |
| John Hancock Whole Life policy, | 2,510.00 |
| Canadian government pension, prospective annual joint and survivor benefit as of 2010 | 21,745.81 |
| Total Assets (exclusive of pension): | 350,624.40 |

H. LIABILITIES

27. Joint Secured Liabilities

| | |
|---|---|
| 1st mortgage, 71 Pleasant Street, Stoneham | $ 144,648.00 |
| Equity loan, 71 Pleasant Street, Stoneham | 7,964.73 |
| Subtotal: | $ 152,612.73 |

BENJAMIN & BENSON
COUNSELLORS AT LAW
BULFINCH SQUARE
THORNDIKE STREET
CAMBRIDGE, MA 02141-1717
(617) 577-1515

3

28. <u>Husband's Unsecured Liabilities</u>

| | |
|---|---:|
| Sovereign Bank cash reserve | 4,000.00 |
| Fleet Bank personal loan | 1,232.00 |
| AAA Financial Credit Card | 5,311.04 |
| American Express Credit Card | 5,000.00 |
| Internal Revenue Service | 171,379.00 |
| Mass. Department of Revenue | <u>28,333.00</u> [1] |
| Subtotal: | $215,255.04 |

[1] Plus additional amount as yet uncertain for 1993 and 1994 state tax returns.

29. <u>Wife's Unsecured Liabilities</u>

| | |
|---|---:|
| Optima Credit Card | 3,900.00 |
| American Express Credit Card | <u>5,000.00</u> |
| Subtotal | $ 8,900.00 |
| | |
| Total Liabilities | 376,767.77 |
| Total Assets | 350,624.40 |
| Total Net Estate | (26,143.37) [2] |

[2] Plus additional amount as yet uncertain for 1993 and 1994 state tax returns.

I. <u>NEEDS OF THE PARTIES</u>

30. The wife's weekly expenses individually are $1,039.00.

31. The husband's weekly expenses individually are $991.89.

32. The wife is at present not capable of providing for her own needs so long as she continues to maintain the former marital home.

33. The husband is capable of providing for his own needs.

34. The husband is able to contribute $250.00 as alimony to the Wife.

J. <u>CONDUCT-CONTRIBUTION</u>

35. The wife has contributed to the acquisition, preservation, and appreciation of the value of the marital estate through her employment and by sharing in housekeeping activities.

36. The husband has contributed to the acquisition, preservation and appreciation of the value of the marital estate through his employment and by sharing in housekeeping activities.

37. The wife has dissipated the assets of the parties and the marital estate by incurring approximately $29,000 in consumer debt as of the date of separation. Both parties incurred

:NJAMIN & BENSON
DUNSELLORS AT LAW
BULFINCH SQUARE
THORNDIKE STREET
1BRIDGE, MA 02141-1717
(617) 577-1515

4

significant liabilities by failing to file their federal and state income tax returns regularly starting in 1993.

38. The wife was supportive of the husband and acted in a responsible way towards him as follows: she attended various business-related functions, doing household chores, and provided companionship until the marriage began to fail in the mid-1990s.

39. The husband was supportive of the wife and acted in a responsible way towards her by helping with her business, doing household chores, supporting and maintaining a close relationship with her daughter from her first marriage, and providing companionship until the marriage began to fail in the mid-1990s.

40. The wife acted in a painful way toward the husband by harassing him at work, blocking his automobile at work and at his therapist's office, such that the Husband had to obtain help to get her to leave, and obtain a restraining order.

K. <u>OPPORTUNITY FOR THE FUTURE ACQUISITION OF ASSETS</u>

41. The wife's opportunities for the future acquisition of assets are limited to her employment opportunities.

42. The husband's opportunities for the future acquisition of assets are limited to his employment opportunities.

L. <u>CONTRIBUTION TO HOME</u>

43. The wife and husband shared housekeeping activities. The husband did marketing, the wife usually cooked. Both parties share housekeeping chores. The wife handled the family finances and was responsible for paying the bills.

:NJAMIN & BENSON
OUNSELLORS AT LAW
BULFINCH SQUARE
THORNDIKE STREET
1BRIDGE, MA 02141-1717
(617) 577-1515

## **RATIONALE**

This case differs from the usual divorce trial because the liabilities outweigh the assets, requiring the court to make a determination, based on the factors in M.G.L. C 208 Sec. 34, as to how the debt, rather than the assets are to be shared in a long-term marriage.

Both parties agree that a marital partnership existed throughout most of the marriage. Therefore, the facts in this case are subject to the same analysis as would be applied to division of assets, i.e., consideration of the Section 34 factors to determine how to equitably distribute their debt and provide for their ongoing financial needs.

The husband and wife were married for 20 years and had no children. The husband was the primary breadwinner, although the wife worked at a series of part-time jobs and operated a neighborhood convenience store for several years during the marriage. They used joint savings to purchase their home. Both parties shared housekeeping chores. The wife handled their finances, paying bills in large part with funds transferred to their joint account by the Husband in addition to some rental income and her earnings. The Husband was not aware of the actual cost of running the household, which included the wife's daughter from her first marriage, and did not realize the extent of the consumer debt incurred by the Wife, until after the parties separated.

By the early 1990s, their financial pressure became intense and there never seemed to be enough money for their needs. From 1993 on, the parties stopped preparing and filing their tax returns. They did file joint federal tax returns for 1993 and 1994, but did not do so until 1997, and then only after receiving a notice from the IRS. Although the Wife denied knowing that their tax returns had not been filed, her testimony was not credible. She filed jointly with the husband when they eventually filed their 1993 and 1994 returns, filed separately in 1997, 1998 and 1999 - after the parties separated, and has made no effort to file either the 1993 and 1994 state tax returns, nor any returns for 1995 and 1996. During the years from 1993, the wife continued to receive from the husband, voluntarily, significant direct support and assumption of her expenses and credit card debt, using the greater part of his income each year.

In order to pay the $30,000.00 + taxes, interest and penalties due on their 1993 and 1994 returns, the husband cashed in an IRA, for approximately $22,000.00 and used a credit

:NJAMIN & BENSON
OUNSELLORS AT LAW
BULFINCH SQUARE
THORNDIKE STREET
1BRIDGE, MA 02141-1717
(617) 577-1515

card advance. An additional $2,300.00 was seized by the IRS from refunds due the wife when she filed her 1997, 1998, and 1999 income tax returns, and the husband reimbursed her the amount seized. The husband has filed no tax returns since the 1993 and 1994 returns were filed in 1997. The total taxes, interest and penalties due for the 1995 through 1999 state and federal tax returns is $199,712, using married filing separately status. An additional amount will be due for the 1993 and 1994 state returns, which have never been filed.

Using money that would otherwise have paid their taxes, the uncontroverted evidence is that the husband continued to support the wife generously, enabling her to maintain her lifestyle without significant financial contribution from her. At the same time, she incurred considerable consumer debt. For calendar years 1995 through 1999, the husband paid for the following.

|      | Support   | Liabilities/Other | Total     |
|------|-----------|-------------------|-----------|
| 1995 | 45,450.00 |                   | 45,450.00 |
| 1996 | 54,100.00 |                   | 54,100.00 |
| 1997 | 47,100.00 | 10,694.00         | 57,794.35 |
| 1998 | 48,000.00 | 34,043.50         | 84,043.50 |
| 1999 | 33,055.00 | 18,686.39         | 51,741.39 |

Because the April 9, 1999 Temporary Order awarded the wife $515 per week, considerably less than the husband's voluntary payments, the wife simply sent the husband her credit card statements demanding that he pay them. In order to preserve his own credit and close the cards to prevent any further liability, the husband has paid off a considerable portion of this debt. But the wife did not stop there. She demanded, and the husband paid, such additional items as house repairs, credit card bills, her $5 co-payments for office visits to her doctor, her dental bills, and even the cost of cremating their dog. No item was too insignificant for her to overlook. She benefited in this way while keeping her own earned income of $17,000 - $18,0000 annually and rental income of $5,000.00 annually.

Since the wife benefited financially from the husband's support, while aware that taxes were not being paid, she must share the responsibility for paying the income tax debt. The

BENJAMIN & BENSON
COUNSELLORS AT LAW
BULFINCH SQUARE
THORNDIKE STREET
CAMBRIDGE, MA 02141-1717
(617) 577-1515

7

husband's pension is a defined benefit plan and, therefore, not available to repay a present debt. The only asset the parties can use for this purpose is the Stoneham house, with an estimated equity of $172,387.00.

Given the circumstances in this case, it is appropriate to utilize the pension as future income stream, Dewan v. Dewan, (I), 17 Mass.App.Ct. 97 (1983). Although the wife presented testimony as to the pension's present value, the wife's expert acknowledged that the opinion was not accurate, and did not reflect the joint and survivor annuity reduction nor the coverture reduction, which would have reduced its value. Even if an accurate present value had been determined, it would not be appropriate for use here. To do so would result in an inequitable division of the parties estate by giving the wife the equity in the home, while the husband paid their tax debt.

In order to pay the tax liability of $199,712, plus the 1993 and 1994 state tax liability, including interest and penalties, it is unfortunate but inescapable that the Stoneham house must be sold and the proceeds used for this purpose. The wife received a significant portion of the income that resulted from the non-payment of their taxes, and was aware of the fact that the returns were not being filed and the taxes not being paid. She cannot now, after receiving the benefit, deny any share in the burden for this liability. Rather, the marital partnership theory is applicable to the debt and the parties should contribute from their joint asset equally to its repayment.

As for the other marital debt incurred by the wife and paid by the Husband, there are no liquid assets available in the marital estate to equalize the parties' contribution. However, the parties do have respective IRA accounts, with the husband having approximately $12,500.00 more than the wife. Allowing the parties to retain their respective IRAs without a transfer to the Wife would balance, to some extent, the husband's repayment of consumer debt largely incurred by her.

Given the disparity in the parties' incomes and earning ability, the wife will need support both now and in the future. The coverture portion of the present projected benefit of the husband's pension should be divided equally, to help provide for her needs after retirement. For the present, the Wife's needs must be met by her employment and support from the husband.

8

The husband has life insurance which can be used to secure the wife's support. Once divorced, the husband cannot continue to maintain the wife on his health insurance plan, but COBRA benefits are available for 36 months at a cost of $265.00 per month. The wife also may have the possibility of obtaining her own employment related health insurance at a lower cost.

## CONCLUSIONS OF LAW

The court has broad discretion to divide the marital estate between the parties. Mahoney v. Mahoney, 425 Mass.441 (1997). In doing so, the court must take into account the various factors of M.G.L.C 208, Sec. 34. Gustin v. Gustin, 420 Mass.854 (1995). "The equitable factors which are to be considered under Section 34 reflect a view of marriage as an implied partnership for the purposes of distribution of property." Savides v. Savides, 400 Mass. 250, 252 (1987). This implied partnership extends to the division of liabilities as well as assets, since both comprise the marital estate. Talbot v. Talbot, 13 Mass.App.Ct. 456 (1982); Cournoyer v. Cournoyer, 40 Mass.App.Ct. 302 (1996) (husband's tax liabilities considered by the court). The weight given to the Sec. 34 factors is to be determined by the trial judge. Rice v. Rice, 372 Mass. 398, 400-401 (1977).

In dividing pension benefits, the court can order an appropriate portion of each pension payment as it is paid. Dewan v. Dewan (I), 17 Mass.App.Ct. 97 (1983). In long-term marriages, "the appropriate method of dealing with pension rights in the context of equitable division must be determined by the circumstances of the particular case." Id. at 102. The court should also consider how much of the pension was earned during the marriage (the coverture portion). Peterson v. Peterson, 30 Mass.App.Ct. 932, 933 (1991). Any division of the pension should not include benefits acquired after the date of trial, the marital partnership having ended. Daugherty v. Daugherty, 50 Mass.App.Ct. 738 (2001).

:NJAMIN & BENSON
OUNSELLORS AT LAW
BULFINCH SQUARE
THORNDIKE STREET
ABRIDGE, MA 02141-1717
(617) 577-1515

## **PROPOSED JUDGMENT**

(On Complaint for Divorce filed December 4, 1998)

This case came on for trial before the court, and the issues having been heard and findings having been duly rendered, it is ordered that the following be entered as a Judgment Nisi of Divorce:

1. The husband shall pay alimony to the wife of $250.00 per week. Unless otherwise ordered by the court, support will be paid until the earlier to occur of the wife's remarriage, the death of the wife, the death of the husband or the Husband's retirement.

2. The husband shall forthwith file with the taxing authorities federal income tax returns for calendar years 1995 through 1999 and Massachusetts income tax returns for calendar years 1993 through 1999 and shall, as soon as possible, enter into negotiations with both taxing authorities to obtain a settlement amount due each. He shall provide the wife with documentation as to the agreement reached with both taxing authorities.

3. The parties shall immediately list the former marital home, located at 71 Pleasant Street, Stoneham, for sale with a mutually agreed to broker, at a listing price suggested by the broker. Both parties will cooperate promptly with all necessary requirements to effectuate prompt sale, including executing documents such as listing agreements, offer and acceptance and purchase and sale agreements. They will adjust the asking price as necessary, based on the recommendations of the broker, and will accept any reasonable offer.

3. Upon sale, the net proceeds will be paid to Phyllis K. Kolman, as Attorney for the Husband, to be held by her in an escrow account for the purpose of paying the parties' outstanding federal and state income tax liability estimated to be $199,712, plus the additional taxes, interest, and penalties for the 1993 and 1994 Massachusetts tax returns. Any interest earned shall added to the account, with each party responsible for any income taxes due on their respective 50% share of any interest income reported in that year. Net proceeds are defined as follows: sales price, less broker's commission, first mortgage balance, equity loan balance, and the usual and necessary costs of closing.

4. Once deposited, counsel for each party shall receive a distribution for counsel fees for the amount owed to them by each party up to a maximum of $8,000 each. Each party shall be

ENJAMIN & BENSON
OUNSELLORS AT LAW
BULFINCH SQUARE
3 THORNDIKE STREET
MBRIDGE, MA 02141-1717
(617) 577-1515

10

solely responsible for payment of any legal fees each has incurred in excess of that amount. The husband's accountant shall estimate the amount of capital gains tax due on behalf of deductions taken on the rental half of the marital home, and that amount shall also be held by husband's counsel and utilized to pay said capital gains tax in the year the house is sold. The remainder of the account shall be held by husband's counsel pending acceptance by the Internal Revenue Service and Massachusetts Department of Revenue of a settlement offer.

5. If the offer in compromise for both the state and federal taxes is less than the available remaining proceeds, any funds remaining shall be divided equally between the parties and distributed to them once the Offer in Compromise is accepted.

6. If the Offer in Compromise accepted by the taxing authorities is more than the amount in the account, the husband shall enter into a payment plan with the taxing authorities, for any additional amount they require. Once that amount has been determined, the husband shall be entitled to a reduction of alimony paid to the wife. Any new support order shall be calculated by using the wife's gross income from all sources and the husband's gross income from all sources, after deducting his self-employment expenses including the employer portion of his FICA tax and further deducting his payment plan obligation for past due taxes through 1999. He shall be entitled to immediate relief pursuant to a Temporary Order to adjust his alimony payments to reflect his new obligation to the taxing authorities.

7. Until the house is sold, the wife shall continue to be responsible for all payments associated with the property, including but not limited to mortgage payments, both principal and interest, real estate taxes, utilities, insurance, and routine maintenance and repairs. If any of these payments are in arrears at the closing date for sale of the property, the husband shall be entitled to reimbursement from the wife for any arrears deducted from the net proceeds, it being the wife's responsibility to keep current these liabilities. The parties shall agree as to the Wife's repayment schedule. If they cannot, the Husband shall be entitled to file a complaint for contempt in the Middlesex Probate and Family Court to obtain the amount due, and the Wife shall be responsible for his legal costs and expenses in addition to her own. Until sale, the wife shall continue to receive the rental income from the property.

8. The husband shall cause to be prepared a Qualified Domestic Relations Order or other appropriate document as required by the Canadian government to divide the coverture portion

ENJAMIN & BENSON
OUNSELLORS AT LAW
BULFINCH SQUARE
3 THORNDIKE STREET
MBRIDGE, MA 02141-1717
(617) 577-1515

11

of the present projected annual benefit, $21,745.81, 50% to the wife. The coverture portion is 74%, determined by dividing the number of years of the marriage (20) by the number of years of the husband's years of employment (27 as of December 2000). Applying this formula to the total benefit, the wife will be entitled to receive $21,745.81 x 74% = $16,108 x 50% = $8,054 annually. The $21,745.81 annual benefit is already adjusted for the joint and survivor annuity option which the husband will elect.

9. The husband will provide health insurance for the wife for so long as he can keep her on his present family plan. When he can no longer do so, the wife may elect COBRA benefits or obtain her own health insurance directly or through employment. She shall do either at her own expense.

10. Each party shall pay his or her own uninsured medical and dental expenses.

11. For so long as he has an alimony obligation to the wife, the husband shall continue to name her as the beneficiary of his present life insurance policies. However, he shall be allowed to convert his present whole life insurance policy to a term policy with the same amount of death benefit, should he choose to do so. The present cash surrender value of the policy, $2,510, shall be the property of the husband.

12. The husband shall retain as his sole property his Dodge Caravan automobile and shall continue to be responsible for all costs associated with the automobile. The wife shall have sole use of the Mazda Miata she currently leases and she shall continue to be responsible for all costs associated with the automobile.

13. The husband shall retain as his sole property his John Hancock IRA valued at $14,883.73.

14. The wife shall retain as her sole property her John Hancock IRA valued at $2,400.

15, The parties shall each keep their respective bank accounts as their sole property.

16. The husband shall retain as his sole property his Sovereign Bank account in the amount of $5,769.13, which has been designated a tax escrow account, and shall use these funds for the purpose of paying off the tax liabilities set forth above.

17. The wife shall retain her jewelry as her sole property.

18. The husband shall have the right, within two weeks of this judgment, to go through the Stoneham house, accompanied by a third party, and designate those items of his personal

:NJAMIN & BENSON
OUNSELLORS AT LAW
BULFINCH SQUARE
. THORNDIKE STREET
IBRIDGE, MA 02141-1717
(617) 577-1515

papers and possessions, household furniture and furnishings, and all other contents of the house that he would like to remove. If the parties cannot agree as to any of the items the husband wishes to remove, they shall alternately choose from the disputed items, with the husband choosing first, the wife second and so on. Once selected, the husband shall remove the items that are to be his sole property within two weeks, at a mutually agreed to time and place, at his expense. The remainder of the household contents shall be the property of the wife, to be removed by her at her expense when the house is sold.

Dated:_____     _____
                                                                                Justice

BENJAMIN & BENSON
COUNSELLORS AT LAW
BULFINCH SQUARE
THORNDIKE STREET
CAMBRIDGE, MA 02141-1717
(617) 577-1515