COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
PROBATE AND FAMILY COURT DEPARTMENT

MIDDLESEX,   SS.                                            NO. 98D4536-DV1


MARLENE JOHANSEN,      Plaintiff-in-Counterclaim

v.

RALPH JOHANSEN,        Defendant-in-Counterclaim



GOVERNMENT
EXHIBIT
6

## JUDGMENT OF DIVORCE NISI

All persons interested having been notified in accordance with law and after hearing it is adjudged nisi that a divorce from the bond of matrimony be granted the said plaintiff-in-counterclaim for the cause of irretrievable breakdown of marriage as provided by c. 208, sec. 1B and that upon the expiration of ninety days from entry of this judgment it shall become and be absolute unless, upon the application of any person within such period, the Court shall otherwise order, and it is further ordered that:

1.  The defendant-in-counterclaim shall pay to the plaintiff-in-counterclaim the sum of $350.00 per week as alimony. Payments hereunder shall be paid until the death of either party, the plaintiff-in-counterclaim's remarriage or until modified by the Court, whichever event is the first to occur.

2.  The defendant-in-counterclaim shall forthwith file with the appropriate taxing authorities Federal income tax returns for calendar years 1995 through 1998 and Massachusetts income tax returns for calendar years 1993 through 1998 and shall, as soon as possible, enter into negotiations with both taxing authorities to obtain a settlement due each. He shall provide the plaintiff-in-counterclaim with documentation as to the agreement, if any, reached with both taxing authorities.

3.  The parties shall immediately list the former marital home, located at 71 Pleasant Street, Stoneham, Massachusetts, for sale with a mutually agreed to broker, at a listing price suggested by the broker. Both parties will cooperate promptly with all necessary requirements to effectuate a prompt sale, including executing documents such as listing agreements, offer and acceptance and purchase and sale agreements. They will adjust the asking price as necessary, based on the recommendations of the broker and will accept any reasonable offer.

-1-

4.  Upon sale, the net proceeds will be paid to Phyllis K. Kolman, as attorney for the defendant-in-counterclaim, to be held by her in an escrow account for the purpose of paying the parties' outstanding Federal and State income tax liability for the years 1993 through 1998. Any interest earned shall be added to the escrow account with each party responsible for any income taxes due on their respective fifty percent (50%) share of any interest income reported in that year. Net proceeds are defined as follows: sales price less broker's commission, first mortgage balance, equity loan balance and the usual and necessary costs of closing.

5.  Once the net proceeds are deposited into the escrow account, counsel for each party shall receive a distribution for counsel fees in the amount of $8,000.00 each. Each party shall be solely responsible for payment of any legal fees each has incurred in excess of that amount. The defendant-in-counterclaim's accountant shall estimate the amount of capital gains tax due on account of deductions taken on the rental half of the marital home and that amount shall also be held by defendant-in-counterclaim's counsel and utilized to pay said capital gains tax in the year the house is sold. The remainder of the escrow account shall be held by defendant-in-counterclaim's counsel pending acceptance by the Internal Revenue Service and the Massachusetts Department of Revenue of a settlement offer.

6.  If the Offer in Compromise for both Federal and State income taxes for the years 1993 through 1998 is less than the available remaining proceeds, any funds remaining shall be divided equally between the parties and distributed to them once the Offer in Compromise is accepted.

7.  If the Offer in Compromise accepted by the taxing authorities is more than the amount in the escrow account, the defendant-in-counterclaim shall enter into a payment plan with the taxing authorities for any additional amount(s) they require. Once that amount has been determined, the defendant-in-counterclaim shall be entitled to a weekly reduction in the amount of alimony paid to the plaintiff-in-counterclaim until such time as he has recouped one-half (½) of the additional amount(s) required to satisfy the taxing authorities. The amount of said deduction shall be the lesser of $50.00 per week or one-half (½) of the amount paid by the defendant-in-counterclaim per week under the payment plan.

8.      Until the house is sold, the plaintiff-in-counterclaim shall continue to be responsible for all payments associated with the property, including but not limited to mortgage payments, both principal and interest, real estate taxes, utilities, insurance and routine maintenance and repairs. If any of these payments are in arrears at the closing date for sale of the property, the defendant-in-counterclaim shall be entitled to reimbursement from the plaintiff-in-counterclaim for any arrears deducted from the net proceeds, it being the plaintiff-in-counterclaim's responsibility to keep these liabilities current. The parties shall attempt to agree on the plaintiff-in-counterclaim's repayment schedule; failing such an agreement, the defendant-in-counterclaim shall be entitled to file a Complaint for Contempt to obtain the amount due him. Until sale of the property, the plaintiff-in-counterclaim shall continue to receive the rental income derived from the property.

9.      The defendant-in-counterclaim shall cause to be prepared a Qualified Domestic Relations Order or other appropriate document as required by the Canadian government to equally divide the coverture portion of the defendant-in-counterclaim's defined benefit pension plan as of the date of trial. Additionally, the defendant-in-counterclaim shall elect the joint and survivor annuity option under said pension plan.

10.     The defendant-in-counterclaim shall provide health insurance for the plaintiff-in-counterclaim for so long as he can keep her on his present family plan. When he can no longer do so, the plaintiff-in-counterclaim may elect COBRA benefits or obtain her own health insurance either directly or though her employment. In either case, the plaintiff-in-counterclaim shall be responsible for this expense.

11.     Each party shall pay his or her own uninsured medical and dental expenses.

12.     For so long as he has an alimony obligation to the plaintiff-in-counterclaim, the defendant-in-counterclaim shall name the plaintiff-in-counterclaim as beneficiary of life insurance on his life in an amount not less than $200,000.00.

13.     The defendant-in-counterclaim shall be entitled to retain as his sole property his whole life insurance policy, the cash surrender value of which is $2,510.00.

14.     The defendant-in-counterclaim shall retain as his sole property his Dodge Caravan motor vehicle and shall continue to be responsible for all costs associated with said motor vehicle.

15.     The plaintiff-in-counterclaim shall have sole use of the Mazda Miata motor vehicle which she currently leases and shall continue to be responsible for all costs associated with said motor vehicle.

16.   The plaintiff-in-counterclaim shall retain as her sole property her John Hancock IRA valued at $2,400.00.

17.   The plaintiff-in-counterclaim is hereby awarded $6,200.00 from the defendant-in-counterclaim's John Hancock IRA which is valued at $14,883.73. The defendant-in-counterclaim shall take all steps necessary to effectuate a tax-free transfer of said sum to the plaintiff-in-counterclaim. The balance of the funds in the defendant-in-counterclaim's John Hancock IRA shall be retained by him as his sole property.

18.   The parties shall each retain their respective bank accounts as their sole property.

19.   The plaintiff-in-counterclaim shall retain her jewelry as her sole property.

20.   The defendant-in-counterclaim shall have the right, within two (2) weeks of this Judgment, to go through the former marital home, accompanied by his counsel or an individual associated with said counsel's law firm, on a date and time convenient to the plaintiff-in-counterclaim, and designate those items of his personal papers and possessions, household furniture and furnishings and all other contents of the home which he would like to remove and retain as his property. If the parties cannot agree as to any of the items which the defendant-in-counterclaim wishes to remove, the parties shall confer with Myra S. Lyons, Esquire of Melrose, Massachusetts who is appointed Special Master for the purpose of mediating any dispute involving personal property. The Special Master shall be paid equally by the parties at her usual and customary hourly rate. In the event that the Special Master is unable to resolve the matter, either party may bring the matter back to Court. If the Court finds that either party has acted arbitrarily, capriciously or in bad faith, the entire cost of such subsequent proceedings, including the fees of the Special Master, shall be borne by that party. Once the parties have agreed as to which items shall be removed by the defendant-in-counterclaim, he shall remove those items within two (2) weeks on a mutually convenient date and time. The remainder of the household contents shall be the sole property of the plaintiff-in-counterclaim.


March 21, 2001                           Mary Anne Sahagian, Justice
Date                                     Probate and Family Court

-4-