D11

Bk: 43541 Pg: 1    Doc: MTG
Page: 1 of 11    08/18/2004 09:35 AM

Return to: Burke & Assoc.
400 Washington St
Suite 300
Braintree MA, 02184

MORTGAGE

THIS MORTGAGE (the "Security Instrument") is DATED __August 13, 2004__

The mortgagor(s) is/are: **Marlene Johansen**

(the "Mortgagor"). This Security instrument is granted to the Mortgagee **Timothy Burke, Esq.** ("Lender").
400 Washington St, Suite 300, Braintree, MA 02184
This Security Instrument secures to the Lender (i) payment of legal services already rendered and to be rendered in the future ("future legal services") in conjunction with a certain civil action as further described and detailed in the Fee Agreement by the Lender. Legal services include all costs of the civil action including but not limited to costs of legal services provided by the law firm Burke & Associates, sheriffs and constables, transcripts, stenographers, outside photocopying at attorney's discretion, case specific supplies (such as diagrams for court) expert witnesses, travel, and long distance telephone calls. Such expenses shall include those incurred in the litigation to date.

The Fee Agreement was made in favor of the Lender by **Marlene Johansen** and dated **March 9, 2004** (the "Fee Agreement"), and includes, but is not limited to, any legal services rendered, with interest thereon, provided to the maker(s) of the Agreement by the Lender under Paragraph I below, (ii) all renewals, extensions and modifications of the Agreement, (iii) the payment of all other sums, with interest, advanced under Paragraph 7 below to protect the security of this Security Instrument, and (iv) the performance of the covenants and agreements under this Security Instrument and the Fee Agreement.

The Fee Agreement is a fixed rate loan agreement, pursuant to which the Lender has agreed to provide legal services to the Mortgagor for a certain civil action pursuant to and described and detailed in the Fee Agreement.

The maximum amount secured by this Security Instrument is $ 100,000 of principal, plus interest thereon and all other charges and fees imposed by the Lender under the Agreement and this Security Instrument, including, but not limited to, amounts disbursed by the Lender under Paragraph 7 below.

For this purpose, the Mortgagor, In consideration of the debt evidenced by the Agreement, does hereby mortgage, grant and convey to the Lender and the Lender's successors and assigns, with STATUTORY POWER OF SALE AND MORTGAGE COVENANTS, the following described property located in the County of Middlesex.

**Commonwealth of Massachusetts:**

"See attached legal description hereto and made a part hereof."

which has the address of **71 Pleasant Street, Stoneham, MA**

71 Pleasant St, Stoneham, MA

TOGETHER with all the improvements now or hereafter erected on the property described above, and all easements, rights. appurtenances, fixtures and rents now or hereafter a part of or related to the property described above, all of which shall be deemed to be and remain a part of such property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing shall be referred to in this Security Instrument as the


GOVERNMENT EXHIBIT 18

1

"Property."

THE MORTGAGOR COVENANTS that the Mortgagor is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances expressly permitted by this Security Instrument. The Mortgagor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances expressly permitted by this Security Instrument.

The Mortgagor and the Lender covenant and agree as follows:

1. The Mortgagor agrees that Future Legal Services shall be secured by and have priority under this Security Instrument as if such Future Legal Services were rendered as of the date this Security Instrument was recorded.

At no time shall the principal amount of the debt secured by this Security Instrument exceed the maximum principal amount of the Agreement. All Legal Services Rendered shall be recorded on the books and records of the Lender.

The Lender and any other Mortgagor or maker(s) of the Agreement may agree to extend, modify, forbear or make any other accommodations with regard to the terms of this Security Instrument or the Agreement without such Mortgagor's consent and without releasing such Mortgagor or modifying this Security Instrument as to such Mortgagor's interest in the Property.

2. Payment of Principal and Interest. The Mortgagor shall promptly pay when due the principal of and the interest on the debt evidenced by the Agreement, and all other fees and charges as provided in the Agreement, and the principal of and interest on any Future Advances secured by this Security Instrument. This Security Instrument secures payment of the Agreement according to its terms which are incorporated by reference into this Security Instrument.

3. Application of Payments. Unless applicable law requires otherwise, all payments received by the Lender under this Security Instrument and the Agreement may be applied to reduce amounts owing to the Lender from the Mortgagor and from the maker(s) of the Agreement in whatever order the Lender, in its sole discretion, chooses.

4. Prior Mortgages and Deeds of Trust; Charges; Liens. The following provisions concerning existing indebtedness ("the Senior Mortgage") are a part of this Mortgage. The lien of this Mortgage securing the indebtedness may be secondary and inferior to an existing lien, Grantor expressly covenants and agrees to pay, or see to the payment of, the Senior Mortgage and to prevent any default on such Senior Mortgage, any default under the instruments evidencing such Indebtedness, or any default under any security documents for such indebtedness.

The Mortgagor shall not modify, amend or extend the Senior Mortgage or the debt secured thereby without the written consent of the Lender. The Mortgagor shall pay or cause to be paid all taxes, assessments, and other charges, fines, and impositions attributable to the Property which may attain a priority over this Security instrument and leasehold payments or ground rents, if any.

The Lender and Mortgagor acknowledge the existence of a certain Federal Tax Lien filed against the property and which comprises the subject matter of the fee agreement. It is the Lender's opinion that the Mortgagor's civil action seeking

2

removal of the Federal Tax Lien has been filed in good faith and fulfils the obligations required of the Mortgagor under this Security Instrument.

The Mortgagor shall not allow any lien or encumbrance to attach to the Property, other than the lien for unpaid real estate taxes not yet due and payable (the "Accrued Taxes") and the Senior Mortgage. Without limiting the scope of the foregoing, the Mortgagor shall promptly discharge any lien, other than the Accrued Taxes and Senior Mortgage, which has priority over this Security Instrument unless the Mortgagor (i) in good faith contests the lien by, or defends against enforcement of the lien in, legal proceedings which, in the Lender's opinion, operate to prevent the enforcement of the lien or forfeiture of any part of the Property, and (ii) deposits with the Lender money or other security acceptable to the Lender to satisfy the amount of such lien. If the Lender determines that any part of the Property is subject to a lien prohibited under this Security Instrument, the Lender may give the Mortgagor a notice identifying the lien, and the Mortgagor shall satisfy the lien or take one or more of the actions described above within ten (10) days of the giving of notice.

5. Hazard or Property insurance. The Mortgagor shall keep the improvements now existing or hereafter erected on the Property Insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as the Lender may require, including without limitation, flood insurance. This insurance shall be maintained in such amounts and for such periods as the Lender may require. Without limiting the foregoing, this Insurance shall be maintained in an amount no less than the maximum principal amount of the Agreement plus all amounts secured by mortgages which have priority over this Security Instrument, unless the replacement value of the Property is less than this sum, in which case this insurance shall be for the full replacement value of the Property.

Where appropriate, the Lender may require the Mortgagor to maintain insurance against rent loss in addition to the insurance described above.

The insurance carrier providing the insurance shall be chosen by the Mortgagor subject to the Lender's approval which shall not be unreasonably withheld. All Insurance policies and renewals shalt be in form and content acceptable to the Lender, with such maximum deductible clauses as the Lender may require, and shall include a standard mortgagee clause in favor of and in a form acceptable to the Lender. The Lender shall have the right to hold the policies and renewals, subject to the terms of the Senior Mortgage.

All insurance policies and renewals shall provide that they may not be cancelled or diminished without ten (10) days' prior written notice to the Lender and not contain any disclaimer of the insurer's liability for failure to give such notice. If the Lender requires, the Mortgagor shall promptly give to the Lender all receipts of paid premiums and renewal notices. In the event of loss, the Mortgagor shall give prompt notice to the insurance carrier and the Lender. The Lender may make proof of loss if not made promptly by the Mortgagor.

Unless the Lender and the Mortgagor otherwise agree in writing, or unless otherwise required under the terms of any prior mortgage of record, casualty insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and the Lender's security is not lessened. if the restoration or repair is not economically feasible or the Lender's security would be lessened, the insurance proceeds shall be applied to the reduction of the Indebtedness of the sums secured by

3

this Security Instrument, whether or not then due, with any excess paid to the Mortgagor.

If the Mortgagor abandons the Property, or does not answer within thirty (30) days, a notice from the Lender that the insurance carrier has offered to settle a claim of insurance benefits, then the Lender may collect and apply the insurance proceeds. The Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the Lender sends the notice to the Mortgagor.

Unless the Lender and the Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraph 3 above or change the amount of the payments. If, under Paragraph 19 below, the Property Is acquired by the Lender, the Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to the Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.   Preservation, Maintenance and Protection of Property; Mortgagor's Loan Application; Leaseholds. The Mortgagor shall keep the Property in good repair and shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste or permit any nuisance on the Property. The Mortgagor shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or the Lenders security interest.

The Mortgagor shall also be in default if the Mortgagor, during the loan application process, gave materially false or inaccurate information or statements to the Lender (or failed to provide the Lender with any material information) in connection with the loan evidenced by the Agreement.

The Mortgagor shall comply with all the provisions of any lease if this Security Instrument is on a leasehold. If the Mortgagor acquires fee title to the Property, the leasehold and the fee title shall not merge unless the Lender agrees to the merger in writing.

7.   Protection of Lender's Rights In the Property; Mortgage Insurance. If the Mortgagor fails to perform the covenants and agreements contained in this Security Instrument promptly, or if there is a legal or administrative proceeding that, in the judgment of the Lender, may significantly affect the Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then the Lender may do or pay for whatever the Lender determines is necessary to protect the value of the Property and the Lender's rights in the Property. The Lender's actions may Include paying reasonable attorneys' fees and entering (or causing its agent or independent contractor to enter) on the Property to make repairs. Although the Lender may take action under this Paragraph 7, the Lender does not have to do so.

Any amounts disbursed by the Lender under this Paragraph 7 shall become additional debt of the Mortgagor secured by this Security Instrument. Unless the Mortgagor and the Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the variable rate of interest

applicable to the Agreement, and shall be payable with interest, upon notice from the Lender to the Mortgagor requesting payment. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

If the Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, the Mortgagor shall pay the premiums required to maintain the mortgage insurance in effect until such time as the requirement for the mortgage insurance terminates in accordance with the Mortgagor's and the Lender's written agreement or applicable law.

8.    Inspection. The Lender or its agent or independent contractor may make reasonable entries upon and inspections of the Property. The Lender shall give the Mortgagor notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

9.    Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of part or all of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to the Lender subject to the terms of the Senior Mortgage and any other mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

In the event of a total taking of the Property, subject to the terms of the Senior Mortgage, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to the Mortgagor. In the event of a partial taking of the Property, unless the Mortgagor and the Lender agree in writing or otherwise required under the terms of Senior Mortgage, the proceeds shall at the option of the Lender be applied toward the amounts secured hereby In such order as the Lender may determine or toward the repair, rebuilding or restoration of the Property upon such conditions as the Lender may require, or toward both of such purposes.

If the Property is abandoned by the Mortgagor, or if, after notice by the Lender to the Mortgagor that the condemnor offers to make an award or settle a claim for damages, the Mortgagor fails to respond to the Lender within thirty (30) days after the date the notice is given, the Lender is authorized, subject to the terms of the Senior Mortgage, to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless the Lender and the Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraph 2 above or change the amount of such payments.

10.    Mortgagor Not Released; Forbearance by Lender Not a Waiver, Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by the Lender to any maker(s) of the Agreement or to any successors in interest of the Mortgagor or of any such maker shall not operate to release the liability of the original Mortgagor or Mortgagor's successors in interest, The Lender shall not be required to (i) begin proceedings against any maker(s) of the Agreement or successors in interest of

the Mortgagor or of any maker(s) of the Agreement, (ii) refuse to extend time for payment, or (iii) otherwise modify amortization of the sums secured by this Security instrument by reason of any demand made by the original maker(s) of the Agreement or the Mortgagor or any successor in interest of the Mortgagor or of such maker. The Lender's forbearance in exercising any right or remedy shall not be a waiver of or preclude the exercise of any such right or remedy.

11.  Successors and Assigns Bound; Joint and Several Liability. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of the Lender and the Mortgagor, subject to the provisions of Paragraph 14 below. The Mortgagor's covenants and agreements shall be joint and several.

12.  Notices. Any notice to the Mortgagor provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address which the Mortgagor designates by written notice to the Lender. Any notice to the Lender shall be given by first class mail to Lender's address stated herein, or to any other address which the Lender designates by notice to the Mortgagor. Any notice provided for in this Security Instrument shall be deemed to have been given to the Mortgagor or the Lender when delivered, or two (2) business days following mailing as provided In this Paragraph 12.

13. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision. To this end, the provisions of this Security Instrument and the Agreement are declared to be severable.

14.  Transfer of the Property of a beneficial Interest in the Mortgagor, Assumption. If the Mortgagor sells or transfers all or any part of the Property or any interest in the Property, (or if a beneficial interest in the Mortgagor is sold or transferred and the Mortgagor Is not a natural person) without the Lender's prior written consent, the Lender will terminate the Lender's commitment to make Future Advances and require immediate repayment in full of all sums secured by this Security Instrument, unless prohibited by applicable law. If Lender requires immediate payment in full under this paragraph, Lender will give mortgagor at least (30) days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If the mortgagor does not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving Mortgagor any further notice of demand for payment. Your rights under the Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives.

15.  Optional Reinstatement of security Instrument by Lender. Notwithstanding the Lender's acceleration of the sums secured by this Security Instrument, the Lender may, in its sole discretion, discontinue any proceedings begun by the Lender to enforce this Security Instrument at any time prior to entry of a judgment enforcing this Security Instrument if: (I) the Mortgagor pays the Lender all sums which would be then due under this Security Instrument and the

Agreement, had no acceleration occurred, (ii) the Mortgagor cures all breaches of any other covenants or agreements of the Mortgagor contained in this Security Instrument and in the Agreement, (iii) the Mortgagor pays all reasonable expenses incurred by the Lender in enforcing the covenants and agreements of the Mortgagor contained in this Security Instrument and in enforcing the Lender's remedies as provided in Paragraph 16 below, Including, but not limited to, reasonable attorneys fees, (iv) the Mortgagor, at the sole option of the Lender, executes a Mortgage Agreement and Deed Modification Agreement which will adjust the rate of interest on the Agreement and will provide such other terms and conditions as the Lender shall specify, including, but not limited to, a termination of the rights of the Maker(s) of the Agreement to Future Advances, and (v) the Mortgagor takes such actions as the Lender may require to assure that the lien of this Security Instrument, the Lender's Interest in the Property and the Mortgagor's obligation to pay the sums secured by this Security Instrument shall continue unimpaired. In the event that the Lender allows the Mortgagor to make such payments and cure this Security Instrument, this Security Instrument as modified and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred. Nothing in this Paragraph 15 shall be deemed to require the Lender to allow the Mortgagor to cure this Security Instrument or otherwise discontinue any proceedings begun by the Lender to enforce this Security Instrument.

16. Acceleration; Remedies. To the full extent permitted by law, upon a breach by the Mortgagor of any covenant in or condition of this Security Instrument or the Fee Agreement or of any instrument executed in connection with this Security Instrument or the Agreement, or upon a breach by the Mortgagor of the Statutory Condition, the Lender may (i) require Immediate payment in full of all sums secured by this Security Instrument without demand or notice, except as expressly prohibited by applicable law, and/or (ii) invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. The Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 16, Including, but not limited to, reasonable attorneys' fees, costs of title evidence, abstracts and title reports.

If the Lender invokes the STATUTORY POWER OF SALE, the Lender shall mail a copy of a notice of sale to the Mortgagor, and to other persons prescribed by applicable law, in the manner provided by applicable law. The Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. The Lender or its designees may purchase the Property at any sale and/or sell the Property in one or more parcels, as the Lender, in its sole discretion, deems appropriate. The proceeds of the sale shall be applied in the following order:(i) to all expenses of the sale, Including, but not limited to, reasonable attorneys fees, (ii) to all sums secured by this Security Instrument and (iii) any excess to the person or persons legally entitled to It.

17. Assignment of Rents. The Mortgagor unconditionally assigns and transfers to the Lender all the rents and revenues of the Property. The Mortgagor authorizes the Lender or the Lender's agents and/or independent contractors to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to the Lender or the Lender's agents and/or independent contractors. However, prior to the Lender's notice to the Mortgagor of the Mortgagor's breach of any covenant or agreement in this Security Instrument, the Mortgagor shall collect and receive all rents and revenues of the Property. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If the Lender gives notice of breach to the Mortgagor: (i) all rents received by the Mortgagor shall be held by the Mortgagor as trustee for the benefit of the Lender only, to be applied to the sums secured by the Security Instrument; (ii) the Lender shall be entitled to collect and receive all of the rents of the Property; and (iii) each tenant of the Property shall pay all rents due and unpaid to the Lender or the Lender's agent on the Lender's written demand to the tenant.

The Mortgagor has not executed any prior assignment of the rents, except in favor of the holder of the Senior Mortgage, and has not and will not perform any act that would prevent the Lender from exercising its rights under this Paragraph 17.

The Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to the Mortgagor. However, the Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of the Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

18.    Hazardous Substances. The Mortgagor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or In the Property. The Mortgagor shall not do, or allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the lawful presence, use or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

The Mortgagor shall give the Lender prompt written notice of any investigation, claim, demand, lawsuit or other action by any governmental regulatory agency or private party involving the Property and any Hazardous Substance or environmental Law of which the Mortgagor has actual knowledge. If the Mortgagor learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, the Mortgagor shall promptly take all necessary actions in accordance with applicable environment law.

As used in this Paragraph 18, "Hazardous Substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 18, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

19.    Loan Charges. If the Agreement is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Agreement exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Mortgagor which exceeded permitted limits will be refunded to

8

Mortgagor. The Lender may choose to make this refund by reducing the principal owed under the Agreement or by mailing a direct payment to Mortgagor. If a refund reduces principal, the reduction will be treated as a partial prepayment under the Fee Agreement.

20. Legislation. If enactment or expiration of applicable laws has the effect of rendering any provision of the Agreement or this Security Instrument unenforceable according to its terms, the Lender, at its option may (i) terminate its commitment to make Future Advances, (ii) require immediate payment in full of all sums secured by this Security Instrument, and/or (iii) invoke any remedies permitted by Paragraph 16 unless expressly prohibited by applicable law.

21. Release. Upon termination and discharge of the Agreement and all other sums secured by this Security Instrument, this Security Instrument shall become null and void and the Lender shall release this Security Instrument without charge to the Mortgagor. The Mortgagor shall pay any recordation costs.

22. Default You will be In default under the Agreement if any of the following occurs, each of which constitutes a breach of a material obligation of yours under the Agreement:

(a) You fail to make any payment when due or to pay any charge or fee when due;

(b) Your action or failure to act adversely affects our security for your loan or a right we have in the security (an attempt by any other creditor to take money or other property of yours that is in our possession is an example of a failure to act that would adversely affect our security or security Interest);

(c) A court determines that you are bankrupt or insolvent; or

23. Results of Default. If you are in default, we may lower your credit limit, we may refuse to render Future Legal Services under the Fee Agreement, we may foreclose on the real property described in this Mortgage securing your loan, we may take whatever other action is permitted under this Mortgage, and we may exercise any and all of our rights with respect to any other property securing your loan. We also may demand that you pay the full amount you owe on your loan immediately. After default, we may assess interest at the increased rate of 2 percent per month on the outstanding principal balance of your loan until all amounts due are paid in full.

REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

The Mortgagor and the Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give notice to the Lender, at the Lender's address as stated herein, of any default under the superior encumbrance and of any sale or other foreclosure action.

BY SIGNING BELOW, the Mortgagor accepts and agrees to the terms and covenants contained in this Security Instrument.

Mortgagor's Copy. The Mortgagor shall be given one copy of the Agreement and of this Security Instrument.

24. Waivers. The Mortgagor waives all rights of homestead exemption in the Property in the Property.

25. Lender's address. All notification as required herein this document, and payments required herein shall be sent to:

Burke & Associates
400 Washington St., Suite 303
Braintree, MA 02184

**BY SIGNING BELOW,**

Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**Witnesses:**

_____    _Marlene E. Johansen_____ (Seal)
                                        8/13/04              Borrower

**COMMONWEALTH OF MASSACHUSETTS**

NORFOLK, ss.

On this 13th day of August, 2004, before me, the undersigned notary public, personally appeared Marlene Johansen, proved to me through satisfactory evidence of identification, which was personal knowledge of identity, to be the person whose name is signed on this document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_____
Notary Public
My commission Expires
June 4, 2010

10

# EXHIBIT A

Being shown as Lot number 1 on a "Plan of Lots in Stoneham, Mass., surveyed for Daniel S. Davis, June 1919, Parker Holbrook, surveyor", recorded with Middlesex South District Deeds Plan Book 279, Plan 48.

Said granted premises contain 7,886 square feet, more or less, and are bounded:

| | |
|---|---|
| EASTERLY | by said pleasant Street, 87 Feet; |
| SOUTHERLY | by Lot E as shown in Plan Book 282, Plan 16, Land formerly of Peffers, 137.23 Feet; |
| WESTERLY | by Pleasant St Terrace, so-called, 92 feet; and |
| NORTHERLY | slightly Northeasterly, by land now or formerly of Newcomb, being Lot Numbered 2 on the first above mentioned Plan, 108.48 |

Being parcel number 4 as described in deed of Florence A. Pike to Peffers, et al, dated January 5, 1945, recorded with said Deeds in Book 6837, Page 118; this conveyance being subject to water and sewer rights for the benefit of lots 3 and 4 on said first mentioned Plan, as fully described, Book 4341, Pages 38 and 42.

