EXHIBIT 1

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
PROBATE AND FAMILY COURT DEPARTMENT

MIDDLESEX,   SS.                          NO. 98D4536-DV1

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
RALPH JOHANSEN,         Plaintiff        *
                                         *
                                         *
v.                                       *
                                         *
MARLENE JOHANSEN,      Defendant         *
* * * * * * * * * * * * * * * * * * * * * * * * * *


* * * * * * * * * * * * * * * * * * * * * * * * * *
MARLENE JOHANSEN,     Plaintiff-in-Counterclaim  *
                                         *
                                         *
v.                                       *
                                         *
RALPH JOHANSEN,       Defendant-in-Counterclaim  *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

**FINDINGS OF FACT ON COMPLAINT FOR DIVORCE FILED DECEMBER 4, 1998
AND ON COUNTERCLAIM FOR DIVORCE FILED JANUARY 21, 1999**

E.   <u>PROCEDURAL HISTORY</u>

1.   The Husband filed a Complaint for Divorce on December 4, 1998 in the Middlesex Division of the Probate and Family Court Department, Docket No. 98D4536-DV1.

2.   The Wife filed an Answer and Counterclaim on January 21, 1999 in the Middlesex Division of the Probate and Family Court Department, Docket No. 98D4536-DV1.

3.   The grounds for the original Complaint are irretrievable breakdown of marriage pursuant to M.G.L. Chapter 208, section 1B.

4.   The grounds for the Counterclaim are irretrievable breakdown of marriage pursuant to M.G.L. Chapter 208, section 1B.

-1-

5.  On March 8, 1999, the Wife filed Motions for Temporary Support and for Provision of an Automobile. On April 9, 1999, the Court (Gibson, J.) entered a Temporary Order that provided for the Husband to pay to the Wife the sum of $515.00 per week as alimony; for the Husband to maintain the Wife on his health insurance; for the Husband to maintain the Wife as beneficiary of his life insurance; and for the Husband to do all things necessary to enable the Wife to lease a new motor vehicle and to pay any fees due at the lease renewal or inception, after which the Wife was responsible for all lease payments and regular operating expenses.

6.  This matter was pre-tried on October 5, 2000.

7.  This matter was tried on January 26, 2001 before Sahagian, J.

F.  BASIC FACTUAL INFORMATION

8.  The Husband and Wife were married at Boston, Massachusetts on November 29, 1980.

9.  This is the second marriage of the Wife.

10.  This is the first marriage of the Husband.

11.  No children were born of the marriage although the Wife's daughter from her first marriage resided with the parties.

12.  The parties last lived together at Stoneham, Massachusetts on or about October 13, 1997.

13.  The Wife resides at 71 Pleasant Street, Stoneham, Massachusetts.

14.  The Husband resides at 5 Snakebrook Road, Wayland, Massachusetts.

C.  AGE

15.  The Wife was born on January 31, 1949 and is fifty-two (52) years of age.

16.  The Husband was born on February 1, 1948 and is fifty-three (53) years of age.

D.   HEALTH

    17.   The Wife is in generally good health.

    18.   The Husband is in generally good health.

E.   STATION

    19.   The parties' station in life when they last lived together was middle-income.

    20.   The Wife's current station in life is middle-income.

    21.   The Husband's current station in life is middle-income.

F.   VOCATIONAL SKILLS, OCCUPATION, INCOME AND EMPLOYMENT

    22.   The Wife has a high school diploma and is employed by National Leisure Group as a travel agent with gross weekly income of $462.00 and net weekly income of $348.00. The Wife also receives rental income of $67.00 per week and alimony from the Husband of $515.00 per week. The Wife's gross income from employment in 2000 was approximately $18,000.00. The Wife has worked as a bank branch manager, owner/operator of a neighborhood convenience store, consultant in the diet industry and the dating service business and, presently, as a travel agent. She has vocational skills commensurate with the above and her employability is good.

    23.   The Husband has a B.S. Degree from Eastern Nazarene College and for the last twenty-seven (27) years has been an executive in charge of developing tourism business for Canada. His gross weekly income is $1,363.46 and his net weekly income is $833.01. The Husband's gross income from employment in 2000 was approximately $85,347.00. His taxable income for this period, after deducting business expenses, was approximately $71,000.00. He has vocational skills commensurate with the above and his employability is good.

G.   ESTATE

    24.   The former marital home located at 71 Pleasant Street, Stoneham, Massachusetts was purchased in 1984 for $125,000.00. The parties stipulated that the home has a current fair market value of $325,000.00 and it is encumbered by a first mortgage with a principal balance of $144,648.00 and a second mortgage with a principal balance of $7,964.73.

25.     The Wife does not own a motor vehicle. She values the contents of the home and her jewelry at $2,500.00.

26.     The Husband drives a 2000 Dodge Caravan motor vehicle standing in his name. He values this vehicle at $15,130.00 and the vehicle is encumbered by a loan in the amount of $17,568.46.

27.     The Wife has the following intangible property:
          John Hancock IRA                            $2,400.00

28.     The Husband has the following intangible property:
          Sovereign Bank account             $5,769.13
          John Hancock IRA                      $14,883.73
          John Hancock Whole Life policy    $2,510.00
          Canadian government defined benefit pension with an uncertain value

## H.    LIABILITIES

29.     The joint secured liabilities of the parties are the two (2) mortgage loans set forth above in paragraph 24 of these Findings of Fact.

30.     The Wife has the following unsecured liabilities:
          Optima credit card                    $3,900.00
          American Express credit card     $5,000.00

31.     The Husband has the following unsecured liabilities:
          Sovereign Bank cash reserve     $4,000.00
          Fleet Bank personal loan           $1,232.00
          AAA Financial credit card          $5,311.04
          American Express credit card     $5,000.00
          Internal Revenue Service         $171,379.00
          Mass. Dept. of Revenue          $28,333.00

        Additionally, the Husband owes an undetermined amount for 1993 and 1994 State income taxes.

## I.    NEEDS OF THE PARTIES

32.     The Wife's weekly expenses individually total $1,039.00.

33.     The Husband's weekly expenses individually total $991.89.

-4-

34.   The Husband is able to provide for his own needs without financial contribution from the Wife and is further able to contribute to the Wife as alimony the sum of $350.00 per week.

35.   The Wife is not able to provide for her own needs without financial contribution from the Husband.

J.   CONDUCT-CONTRIBUTION

36.   The Wife has contributed to the acquisition, preservation and appreciation of the value of the marital estate as follows: by working during the marriage and by sharing in housekeeping duties.

37.   The Husband has contributed to the acquisition, preservation and appreciation of the value of the marital estate as follows: by working throughout the marriage and by sharing in housekeeping duties.

38.   Neither party has dissipated marital assets and/or the marital estate although both parties contributed to the significant income tax liability by not filing Federal and State income tax returns.

39.   The Wife was supportive of the Husband and acted in a responsible way towards him as follows: by attending various business-related functions, doing household chores and providing companionship until the marriage began to fail in the mid-1990s.

40.   The Husband was supportive of the Wife and acted in a responsible way towards her as follows: by helping with her business, doing household chores, supporting and maintaining a close relationship with the Wife's daughter from her first marriage and providing companionship until the marriage began to fail in the mid-1990s.

K.   OPPORTUNITY FOR THE FUTURE ACQUISITION OF ASSETS

41.   The Wife's opportunities for the future acquisition of assets will come primarily from her continued employment.

42.   The Husband's opportunities for the future acquisition of assets will come primarily from his continued employment.

43.    The parties shared housekeeping duties. The Husband did the grocery shopping and the Wife cooked most of the meals. Both parties performed housekeeping chores. The Wife handled the family finances and was responsible for paying the family bills.

## M.    DISCUSSION

This is a long-term marriage where the parties disagree as to how their liabilities (which outweigh their assets) should be divided.

The parties were married for twenty (20) years and both parties agree that a marital partnership existed throughout most of the marriage. The Husband was the primary breadwinner although the Wife did work a series of part-time jobs and operated a neighborhood convenience store for several years during the marriage. They used joint savings to purchase their home. The Wife handled the family's finances, paying bills in large part with funds transferred to their joint account by the Husband as well as with her earnings and some rental income which the parties received. The Husband was not really aware of the cost of running the household and did not realize the extent of consumer debt incurred by the Wife until after the parties separated.

Beginning in 1993, the parties stopped preparing and filing their Federal and State income tax returns. They ultimately filed their 1993 and 1994 Federal income tax returns in 1997 but only after receiving a notice from the Internal Revenue Service. Although the Wife testified that she was unaware that income tax returns were not filed, her testimony in this regard was not credible. She did file jointly with the Husband when they eventually filed their 1993 and 1994 returns. She subsequently filed her own returns for 1997, 1998 and 1999. During the time when the parties were not filing their tax returns, the Wife continued to receive from the Husband significant portions of his income.

In order to pay the $30,000.00 + taxes, interest and penalties which were due on the parties' 1993 and 1994 Federal income tax returns, the Husband cashed in an IRA for approximately $22,000.00 and used a credit card advance. An additional $2,300.00 was seized by the IRS from refunds due the Wife when she filed her 1997, 1998 and 1999 income tax returns and the Husband reimbursed her the amount seized. The Husband has not filed any returns since the 1993 and 1994 Federal returns were filed in 1997. He has had prepared, however, Federal and State income tax returns for the years 1995 through 1999. Using a married filing separately status, the total taxes, interest and penalties for these returns is $199,712.00. An additional amount will be due for the 1993 and 1994 State income tax returns which have never been filed.

The uncontroverted evidence in this matter is that both parties benefitted from their failure to file income tax returns. That portion of the Husband's income which would otherwise have been used to pay the parties' tax liability was instead used to support the parties' lifestyle. Since the Wife benefitted financially from the Husband's income during this period, while aware that income taxes were not being paid, she must share the

-6-

responsibility for paying the income tax debt through tax year 1998. Since the Court ordered the Husband to pay alimony commencing in April, 1999, the 1999 income tax liability should be borne by the Husband individually. The only real asset that the parties have, other than the Husband's defined benefit pension plan, is the marital home which has equity of approximately $172,387.00.

Given the circumstances in this case, it is appropriate to utilize the Husband's pension as a future income stream, Dewan v. Dewan, (I), 17 Mass.App.Ct. 97 (1983). Although the Wife presented testimony as to the pension's present value, the Wife's expert acknowledged that he did not take into account the marital coverture reduction nor the joint and survivor annuity reduction which the Husband has voluntarily agreed to elect. The expert did testify that his opinion of value would be higher since there was a portion of the Husband's pension that he was unable to value. However, the erroneous assumptions made by the Wife's expert render his opinion meaningless. Moreover, even if an accurate present day value had been obtained, to offset the value of the Husband's pension against the equity in the marital home would result in an inequitable division of the parties' assets and liabilities.

Unfortunately, the only asset available to the parties to address the enormous tax liability is the marital home. Accordingly, the home must be sold and the proceeds utilized for this purpose.

Although the Husband seeks additional credits for the consumer debt of the Wife which he has paid down, the Court is not inclined to grant this credit.

Given the disparity in the parties' incomes and earning capacities, the Wife will require ongoing support from the Husband, albeit at a rate which is less than that awarded to her at the Temporary Order hearing of April, 1999. The Husband has life insurance available to him and the Court will require that this insurance be used to secure his alimony obligation.

## CONCLUSIONS OF LAW

The Court has broad discretion to divide the marital estate between the parties. Mahoney v. Mahoney, 425 Mass. 441 (1997). In doing so, the Court must take into account the various factors of M.G.L. c. 208, sec. 34. Gustin v. Gustin, 420 Mass. 854 (1995). "The equitable factors which are to be considered under Section 34 reflect a view of marriage as an implied partnership for the purpose of distribution of property." Savides v. Savides, 400 Mass. 250, 252 (1987). This implied partnership extends to the division of liabilities as well as assets, since both comprise the marital estate. Talbot v. Talbot, 13 Mass.App.Ct., 456 (1982); Cournoyer v. Cournoyer, 40 Mass.App.Ct. 302 (1996) (husband's tax liabilities considered by the Court). The weight given to the Sec. 34 factors is to be determined by the trial judge. Rice v. Rice, 372 Mass. 398, 400-401 (1977).

In dividing pension benefits, the Court can order an appropriate portion of each pension payment as it is paid. <u>Dewan v. Deewan</u> (I), 17 Mass.App.Ct. 97 (1983). In long-term marriages, "the appropriate method of dealing with pension rights in the context of equitable division must be determined by the circumstances of the particular case." <u>Id</u>. At 102. The Court should also consider how much of the pension was earned during the marriage (the coverture portion). <u>Peterson v. Peterson</u>, 30 Mass.App.Ct. 932,933 (1991). Any division of the pension should not include benefits acquired after the date of trial, the marital partnership having ended. <u>Daugherty v. Daugherty</u>, 50 Mass.App.Ct. 738 (2001).

<u>March 21, 2001</u>
Date

Mary Anne Sahagian, Justice
Probate and Family Court

-8-

EXHIBIT 2

*Middlesex* Division                    *The Trial Court*
                    *Probate and Family Court Department*
                                            Docket No. 980-4536-DVI

MARLENE E. JOHANSEN
PLAINTIFF/PETITIONER

        V.

RALPH E JOHANSEN
Defendant/Respondent

                NOTICE OF APPEAL

Now comes Marlene E. Johansen, the Plaintiff
hereby appeals from the Judgement
of Divorce NISI, dated 3/21/01 by
Judge MARY ANNE SAHAGIAN, JUSTICE
PROBATE + FAMILY COURT

---

FILED    APR 2 7 2001

MARLENE E. JOHANSEN

4/27/01

EXHIBIT 3

_Middlesex_ **Division**   **Probate and Family Court Department**   Docket No. _____   **EXHIBIT D**

_MARLENE E. JOHANSEN_
**Plaintiff/Petitioner**

v.

_RALPH E. JOHANSEN_
**Defendant/Respondent**

**MOTION FOR**

_Stay of Judgement_

Now comes _MARLENE E. JOHANSEN_ the plaintiff/defendant/petitioner/respondent,
(name of moving party)

in this action who moves this Honorable Court as follows: _Stay of operation_

_of Judgement NISI date 3/21/01_

_Pending outcome of appeal_

---

**NOTICE OF HEARING**

This Motion will be heard at the Probate & Family

Court in _____
(city)

on _____
(month/day/year)

at _____
(time of hearing)

_Marlene E. Johansen_
(signature)

_MARLENE E. JOHANSEN_
(PRINT name)

_21 PLEASANT ST_
(street address)

_STONEHAM MA   02180_
(city or town)   (state)   (zip code)

Date: _4/27/01_      Tel. No. ( _____ )

---

The within motion is hereby **ALLOWED — DENIED.**

_____
Date

_____
Justice of the Probate and Family Court

---

**INSTRUCTIONS**

1. <u>Generally</u>, refer to Mass.R.Civ.P./Mass.R.Dom.Rel.P. 6 and 7; Probate Court Rules 6, 29, and 29B.
2. If the opposing party is represented by an attorney who has filed an appearance, service of this motion <u>MUST</u> be made on the attorney.
3. Certificate of Service on Reverse side must be completed.
4. All motions shall be accompanied by a proposed order which shall be served with the motion.

CJ-D 400 (4/98)

**FILED**   APR 2 7 2001

EXHIBIT 4

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

CLIENT'S COPY

01-J-294

RALPH JOHANSEN

vs.

MARLENE JOHANSEN.

ORDER

Paragraphs 3-7 of the divorce judgment dated March 21, 2001 are stayed pending determination of the defendant's appeal. Whether the defendant's interest may be reached by the IRS may involve additional issues not determined or determinable by the Probate Court.

So ordered.

By the Court (Dreben, J.),

Assistant Clerk

Entered:  June 7, 2001