## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

---

**MARLENE JOHANSEN**

**Plaintiff and Counterclaim Defendant**

**v.**

**UNITED STATES OF AMERICA**

**Defendant and Counterclaim Plaintiff**

**v.**

**TIMOTHY BURKE**

**Counterclaim Defendant**

Civil Action No. 04-11789-RCL

---

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE UNITED STATES MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF HER CROSS MOTION FOR SUMMARY JUDGMENT**

I.  <u>Procedural History.</u>

The Plaintiff filed a quiet title action pursuant to 28 USCA Section 2410 on August 17, 2004. The United States' answer to the complaint included claims against the Plaintiff, her counsel and her mortgage holder. The claim against the mortgage holder was dismissed. Counsel's request to be dismissed from the case was denied by Magistrate Robert Collings on July 14, 2005. Counsel did not object to the Magistrate's ruling and filed an Answer on August 1, 2005. On July 29, 2005, the United States filed its Motion for Summary Judgment.

II.  <u>Facts.</u>

The Plaintiff, Marlene Johansen (hereinafter referred to as "Ms. Johansen") and Ralph Johansen (hereinafter referred to as "Mr.

Johansen") were married on November 29, 1980. (Plaintiff's Statement of Undisputed Facts ("SUF") Number ("No.") 1.)

On or about March 27, 1984, Marlene and Ralph Johansen bought 71 Pleasant Street in Stoneham, Massachusetts taking title as Tenants by the Entirety (the "Home"). (SUF No. 2.)

Mr. Johansen filed for divorce on November 16, 1998. (SUF No. 3.)

On March 21, 2001 the Honorable Mary Anne Sahagian, Justice of the Massachusetts Probate and Family Court ruled (the "Ruling") that the home had a value of $325,000. and was subject to encumbrances of a first mortgage with a balance of $144,648., as well as a second mortgage with a balance of $7,964.73.(SUF No. 4.)

The Ruling also found that Mr. Johansen had a liability to the Internal Revenue Service in the amount of $171,379. and the Massachusetts Department of Revenue of $28,333. (and an undetermined additional amount).(SUF No. 5.)

The Ruling held that:

> The only real asset that the parties have, other than the Husband's defined benefit pension plan, is the marital home which has equity of approximately $172,387.00.
> ...
> Unfortunately, the only asset available to the parties to address the enormous tax liability is the marital home. Accordingly, the home must be sold and proceeds used for this purpose. (SUF No. 6.)

Marlene Johansen filed a timely appeal of the Probate and Family Court's ruling and further filed a Motion for a Stay of the Divorce Judgment. (SUF No. 7.)

On June 7, 2001, Justice Dreben of the Massachusetts Appeals Court sitting as a single justice, issued an order stating:

> Paragraphs 3-7 of the divorce judgment dated March 21, 2001 are stayed pending determination of the defendant's appeal. Whether the defendant's interest may be reached by the IRS may involve additional issues not determined or determinable by the Probate Court. (SUF No. 8.)

The Division of Mr. Johansen's pension was not stayed by Judge Dreben's order. (SUF No. 9.)

On or about July 26, 2004, Mr. Johansen moved the Probate Court to Stay the division of his pension. (SUF No. 10.)

On September 21, 2001, Mr. Johansen's Motion to Stay the Division of his Pension was denied. (SUF No. 11.)

On or about October 31, 2001, Ms. Johansen filed a Complaint for Contempt with the Probate Court due to Mr. Johansen's failure to comply with the Probate Court's Judgment. (SUF No. 12.)

On December 17, 2001, Mr. Johansen's counsel made a settlement offer to Ms. Johansen's counsel. (SUF No. 13.)

On December 24, 2001 (the continued date of the Contempt Hearing) Mr. and Ms. Johansen, by way of their counsel, entered into extensive negotiations relative to resolving their dispute. (SUF No. 14.)

On December 24, 2001 Ms. Johansen had a legal right to a portion of Mr. Johansen's pension. (SUF No. 15.)

Mr. Johansen believed that his pension was a valuable asset. (SUF No. 16.)

Ms. Johansen wished to receive the Home and believed she had an interest in Mr. Johansen's pension. (SUF No. 17.)

Mr. and Ms. Johansen negotiated an agreement whereby Ms. Johansen exchanged her court ordered right in Ralph's pension for title to the Home. (SUF No. 18.)

The Johansen's believed that the exchange was fair. (SUF No. 19.)

Marlene and Ralph Johansen agreed to a judgment being entered by the Probate Court on December 24, 2001 (the "Judgment")(SUF No. 20.).

The Judgment required Ralph Johansen to "forthwith execute a quitclaim deed transferring all of his interest in the former marital home located in Stoneham to the Wife."(SUF No. 21.)

The Judgment required Ms. Johansen to release all claims that she had to her former spouses' pension plan assets.(SUF No. 22.)

In its Judgment the Probate and Family court of the Commonwealth of Massachusetts found that its:

> Judgment of Divorce Nisi dated March 21, 2001 be modified in accordance with the terms of an Agreement dated December 24, 2001, filed, incorporated and not merged in this Judgment but nevertheless shall survive and have independent legal significance ....(SUF No. 23.)

On January 4th, 2002 Mr. and Ms. Johansen executed a deed to Ms. Johansen (the "Deed").(SUF No. 24.)

On December 9, 2002, the Deed was recorded by the Commonwealth of Massachusetts' Registry of Deeds for Middlesex

County. (SUF No. 25.).

On December 18, 2002, a Notice of Federal Tax Lien on the property of Ralph Johansen was recorded by the Commonwealth of Massachusetts' Registry of Deeds for Middlesex County.(SUF No. 26.)

On January 31, 2004 a Notice of Federal Tax Lien stating that Marlene Johansen was a Nominee of Ralph Johansen was recorded by the Commonwealth of Massachusetts' Registry of Deeds for Middlesex County (the "Nominee Lien").(SUF No. 27.)

Ralph Johansen did not retain any interest in the Home after its transfer. (SUF No. 28.)

Ralph Johansen did not exercise dominion or control over the Home after its transfer. (SUF No. 29.)

Ralph Johansen did not pay any expenses of the Home after its transfer. (SUF No. 30.)

II.  <u>Law and Argument.</u>

Rule 56 of the Federal Rules of Civil Procedure provides that a motion for summary judgment will be granted if (1) there is no genuine issue of material fact and (2) the moving party is entitled to judgment as a matter of law.

A party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates that a party opposing the motion has no reasonable expectation of proving an essential element of that party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 328 (1986).

Here the United States will be unable to prove critical elements of each of its claims and is unable to oppose the claim made by the Plaintiff.

1.    <u>The United States' Claim that Ms. Johansen is a Nominee of Mr. Johansen is Entirely Unsupported by Fact or Law.</u>

The United States' allegation that Ms. Johansen is holding property as a nominee for her ex-husband is unsupported by any evidence. The Plaintiff was involved in a very contentious divorce with her ex-husband. Her ownership of the Home occurred only after the Appeals Court for the Commonwealth of Massachusetts placed a stay on the Probate and Family Court's initial ruling and after a modified judgment was entered by the Probate and Family Court. Ms. Johansen pays all of the expenses for the Home. Both Mr. and Ms. Johansen testified at their depositions that Ms. Johansen was not holding the Home for Mr. Johansen. There is not a single fact that the United States can rely on to support the proposition that Ms. Johansen is holding the Home as a nominee for Mr. Johansen.

A nominee is one who holds bare legal title to property for the benefit of another. <u>Black's Law Dictionary (7th ed. 1999).</u> <u>United States v. Webb</u>, 595 F.2d 203 (4th Cir. 1979).

The factors which have been considered in making the determination that a person is holding property for another are:

(1) no consideration or inadequate consideration paid by the nominee;

(2) property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while

6

the transferor continues to exercise control over the property;

(3) close relationship between transferor and the nominee;

(4) failure to record conveyance;

(5) retention of possession by the transferor;

(6) exercise of dominion or control by the taxpayer; and,

(7) expenses of the property paid by the taxpayer.

Please see <u>United States v. Miller Brothers Construction Co.</u>, 505 F.2d 1031 (10th Cir. 1974); <u>Towe Antique Ford Foundation v. Internal Revenue Service</u>, 791 F. Supp. 1450 (D. Mont. 1992), aff'd without opinion,768 F.2d 686 (5th Cir. 1985).

The Home was received in a settlement, not in anticipation of any suit, the parties to the transfer had terminated their relationship, Mr. Johansen did not exercise dominion or control over the Home and Ms. Johansen paid the Home's expenses.

Ms. Johansen is not a nominee of Mr. Johansen. The "nominee lien" is properly invalidated and the United States' claim dismissed.

2.   <u>Discussion of Internal Revenue Code Section 6321 and 6323.</u>

In <u>United States v. McCombs</u>, 30 F.3d 310(2d Cir. 1994) the Second Circuit Court of Appeals stated as follows:

Federal tax liens are creatures of federal law. Section 6321 of Title 21 "authorizes the imposition by the Government of a tax lien upon property of the taxpayer when [she] is in default." <u>United States v. 110-118 Riverside Tenants Corp.</u>, 886 F.2d 514, 518 (2d Cir. 1989), cert. denied, 495 U.S. 956 (1990). A lien imposed pursuant to section 6321, moreover, is deemed to arise at the time that the assessment is made and continues until the amount of liability set forth in the assessment is satisfied. <u>26 U.S.C. Section 6322</u>.

By the same token, the relative priority of a federal tax
lien is governed by federal law. <u>United States v. Equitable
Life Assurance Soc'y</u>, 384 U.S. 323, 328, 330 (1966); see
also <u>Hartford Provision Co. v. United States,</u> 579 F.2d 7, 9
(2d Cir. 1978) ("[p]riority of liens under 26 U.S.C. section
6323 is a matter of federal law"); <u>PPG Indus. v. Hartford
Fire Ins. Co.</u>, 531 F.2d 58, 61 (2d Cir. 1976). In general,
"priority as a lienor is determined by the . . . rule of
'first in time is the first in right.'" <u>Don King Prods. v.
Thomas</u>, 945 F.2d 529, 533 (2d Cir. 1991) (quoting <u>United
States v. City of New Britain</u>, 347 U.S. 81, 87-88 (1954)).
Where the priority of the federal tax lien is challenged by
a subsequent purchaser of and/or the holder of a security
interest in the encumbered property, however, the relative
priority of the interests is controlled by 26 U.S.C. section
6323.

Section 6323(a) provides that a federal tax lien "shall not
be valid as against any purchaser [or] holder of a security
interest . . . until notice thereof which meets the
requirements of subsection (f) has been filed by the
Secretary." With respect to real property, the notice
requirement under the statute requires proper filing of the
tax lien pursuant to the laws of the state "in which the
property subject to lien is situated." 26 U.S.C. section
6323(f)(1)A(i). Where, as here, the property is situated in
a state that invalidates a deed against a bona fide
purchaser unless the filing of that deed has been recorded,
a race-notice state, see <u>Goldstein v. Gold</u>, 106 A.D.2d 100,
101-02, 483 N.Y.S.2d 375, 377 (2d Dep't 1984) (New York is a
race-notice state requiring that a subsequent purchaser have
no notice of prior purchase or lien and "win the race to the
recording office"), affd in part, 66 N.Y.2d 624, 485 N.E.2d
239, 495 N.Y.S.2d 32 (1985), notice of the federal tax lien
"shall not be treated as meeting the . . . requirements"
with respect to such a purchaser "unless the fact of filing
[the tax lien] is entered and recorded in [an] index . . .
in such a manner that a reasonable inspection of the index
will reveal the existence of the lien." 26 U.S.C. section
6323(f)(4).

<u>IRC Section 6323(a)</u> states:

The lien imposed by section 6321 shall not be valid as
against any purchaser, holder of a security interest,
mechanic's lienor, or judgment lien creditor until notice
thereof which meets the requirements of subsection (f) has
been filed by the Secretary.

There is no dispute that Ms. Johansen is not a holder of a security interest nor a mechanics lienor. The Plaintiff maintains that she meets both of the remaining requirements of Section 6323 in that she is a purchaser and a judgment lien creditor.

3.  Ms. Johansen was a Purchaser of the Home for the Purposes of IRC § 6323.

IRC Section 6323(h)(6) defines a purchaser for the purposes of Section 6323:

> The term "purchaser" means a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice. In applying the preceding sentence for purposes of subsection (a) of this section, and for purposes of section 6324–
>
> (A)  a lease of property,
> (B)  a written executory contract to purchase or lease property,
> (C)  an option to purchase or lease property or any interest therein, or
> (D)  an option to renew or extend a lease of property,
>
> which is not a lien or security interest shall be treated as an interest in property.

In its brief the United States maintains that Ms. Johansen's knowledge of Mr. Johansen's tax issues is of consequence to the issue of whether she is a purchaser.[1] The United States' position is in direct contravention of a published Revenue Ruling of the Service and of the Appellate Court precedents which have

---

[1]  Notably, the United States discusses her knowledge of the tax issues and not a tax lien. As the government had not prepared a Notice of Federal Tax Lien, any knowledge of the secret lien of IRC § 6321 would be constructive and not actual notice as required by the statute.

9

considered the United States' argument.

In McCombs the Court addressed the priority of one of the parties, Robert, and stated as follows:

> The relative priority of Robert's security interest, unlike that of Mary and Kelly, turns exclusively on whether he is entitled to invoke the protection of section 6323, the federal statute governing the relative priority of federal tax liens against the interests of subsequent purchasers and holders of security interests. In concluding that he was not so enticed, the magistrate judge found that Robert was "not protected under 26 U.S.C. section 6323(b)(1) as a purchaser or holder of a security interest because he failed to sustain his burden of showing that he 'did not have actual notice or knowledge of the existence of such [tax] lien[s],' for the same reasons that he failed to show lack of knowledge of the fraudulent conveyance of September 15, 1982." 826 F. Supp. at 1500 (alteration in original) (emphasis added) (citation omitted). Appellants contend, however, that Robert primarily qualifies for protection under 26 U.S.C. section 6323(a), not (b)(1), for which actual notice or knowledge of the tax lien is irrelevant. As such, appellants insist that Robert's status under the statute is identical to that of Mary and Kelly and thus whether Robert is entitled to invoke section 6323(a) turns on whether he, like Mary and Kelly, was on record notice of the tax liens. Because the magistrate judge correctly found that the 1982 tax lien was recorded outside the chain of title under New York law, appellants conclude that the government ran afoul of the notice requirements under section 6323(f) with respect to Robert, a subsequent purchaser, as it had with Mary and Kelly and, thus, Robert was entitled to priority over the 1982 tax lien pursuant to section 6323(a). We agree.
>
> The statute makes clear that a "holder of a security interest," in addition to a purchaser, comes within the protection of 26 U.S.C. section 6323(a). A security interest under the statute is defined as:
>
> [A]ny interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth. 26 U.S.C. section 6323(h)(1). It is undisputed that Robert holds a security interest in the

Property by virtue of his mortgage for $53,000. Thus, the same notice requirements under section 6323(f)(4) that apply to purchasers, in this case Mary and Kelly, apply to Robert, a mortgagee of the Property. See, e.g., United States v. Carson, 741 F. Supp. 92, 94-95 (E.D. Pa. 1990) ("For the United States to prevail over a purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor, a notice of the federal tax lien must be on file.").

After reviewing the case law, as well as the plain language and legislative history of section 6323, we are satisfied that record notice, as opposed to actual knowledge, of the tax lien is required to deprive a person of section 6323(a)'s protection. See, e.g., TKB Int'l v. United States, 995 F.2d 1460, 1465-66 (9th Cir. 1993) (where federal tax liens are recorded outside the subsequent purchaser's chain of title, the liens are not valid against a subsequent purchaser who had actual notice of their existence prior to purchase); United States v. Beaver Run Coal Co., 99 F.2d 610, 613 (3d Cir. 1938). Had Congress intended that actual knowledge be required under section 6323(a), it would have expressly said so as it did under subsection (b)(1). Cf. 26 U.S.C. section 6323(b)(1)(A), (B); see also TKB Int'l, 995 F.2d at 1466 n. 4 (citing S. Rep. No. 1622, 83rd Cong., 2nd Sess. 5224 (1954) (deleting provision proposed by the House of Representatives to limit section 6323 to qualified persons who take without actual knowledge); H.R. Conf. Rep. No. 2543, 83rd Cong., 2nd Sess. 78 (1954) (House recedes from Senate's deletion)). Thus, the mere finding that Robert "failed to sustain his burden of showing that he 'did not have actual notice or knowledge of THE EXISTENCE OF SUCH [TAX] LIEN[S]'" cannot deprive him of the statute's protection. 826 F. Supp. at 1500 (alteration in original) (emphasis added) (quoting 26 U.S.C. section 6323(b)(1)(A)).

The United States in Revenue Ruling 2003-108, 2003-2 C.B. 963, ruled as follows:

For purposes of I.R.C. section 6323(a), a purchaser, holder of a security interest, mechanic's lienor or judgment lien creditor is protected against a statutory tax lien for which a notice of federal tax lien has not been filed notwithstanding actual knowledge of the statutory tax lien.

There is no basis upon which the United States can maintain that Ms. Johansen's knowledge of the tax issues of Mr. Johansen

is of any bearing on this matter.[2]

    i.   Massachusetts Law Governing Divorce Supports the
Plaintiff's Position that an Exchange Occurred.

Massachusetts General Laws Chapter 208 Section 34 governs

the division of property in a divorce.

In Heins v. Ledis, 422 Mass. 477 (1996) the Supreme Judicial

Court discussed the history and intentions of this statute as

follows:

> The court's power to award alimony and make an equitable
> division of property is wholly statutory. See Gottsegen v.
> Gottsegen, 397 Mass. 617, 621 (1986); Inker, *Alimony and
> Assignment of Property: The New Statutory Scheme in
> Massachusetts*, 10 Suffolk U.L. Rev. 1, 7 (1975).
>       ...
> The 1974 amendment to G. L. c. 208 gave courts the ability
> to award alimony to either a husband or wife, and to award
> either spouse's property to the other. St. 1974, c. 565,
> approved July 19, 1974. Bianco v. Bianco, 371 Mass. 420, 422
> (1976). Allowing a court to divide the property was seen as
> a mechanism for recognizing the nonmonetary contribution of
> a spouse, usually the wife, to a marriage without the
> inherent limitation of alimony that it be only for "the
> amount necessary to support the wife in the manner of living
> to which she has been accustomed." Inker, supra at 8.
>       ...
> A judge has broad discretion when awarding alimony and
> dividing marital assets pursuant to G. L. c. 208, § 34 (1994
> ed.).(fn2); Drapek v. Drapek, 399, Mass. 240, 243 (1987);
> Rice v. Rice, 372 Mass. 398, 400 (1977); Bianco v. Bianco,
> supra. The judge must consider fourteen mandatory factors
> set out in the third sentence of § 34, namely "the length of
> the marriage, the conduct of the parties during the
> marriage, the age, health, station, occupation, amount and
> sources of income, vocational skills, employability, estate,
> liabilities and needs of each of the parties, and the

---

[2]   In its Motion for Summary Judgment the United States argues
that Ms. Johansen's knowledge of Mr. Johansen's tax issues is of
consequence to this matter. The United States in a published ruling
disagrees with the position that it advances in its motion.
Wherein the United States Revenue Ruling and the precedent's cited
therein and above are all in accord, the United States' position is
a clear error and most likely the result of an oversight.

opportunity of each for future acquisition of capital assets and income." In addition, the judge may, in his or her discretion, consider "the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit." G. L. c. 208, § 34. <u>Bowring v. Reid</u>, 399 Mass. 265, 267 (1987). <u>Drapek v. Drapek</u>, supra;

... 

General Laws c. 208, § 34, provides that "[i]n addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other." The concepts of alimony and property division have been historically viewed as separate and distinct. "The use of the words "in lieu of" clearly indicates that something other than alimony was intended." Inker, *Alimony and Assignment of Property: The New Statutory Scheme in Massachusetts*, 10 Suffolk U.L. Rev. 1, 4--5 (1975). The two theories evolved in response to conceptually and practically distinct challenges in the development of family law. "Alimony is an award for support and maintenance and has historically been based on the common law duty of the husband to support his wife. Property division, on the other hand, is based on the joint contribution of the spouses to the marital enterprise." *Id*. at 11. See <u>Heacock v. Heacock</u>, 402 Mass. 21, 24 (1988) (property division serves different purpose than, and does not preclude, tort action for damages suffered during marriage). Property settlements are designed largely to effectuate a final and complete settlement of obligations between the divorcing spouses. While alimony is modifiable on the showing of a material change in circumstances, see G. L. c. 208, § 37 (1994 ed.), property settlements are not.

... 

In making an equitable division of the parties' property, the judge had available for distribution "all or any part of the estate of the other." G. L. c. 208, § 34. A party's "estate" includes all property to which a party holds title, however acquired. <u>Dalessio v. Dalessio</u>, 409 Mass. 821, 825 (1991), S.C., 413 Mass. 1007 (1992). <u>Drapek v. Drapek</u>, 399 Mass. 240, 243 (1987).

In this matter the Probate Court and the Massachusetts' Appeals Court were fully aware of Mr. and Ms. Johansen's assets and liabilities, including Mr. Johansen's tax liability.

The Probate Court was statutorily required to equitably divide Mr. and Ms. Johansen's property. It did so in its modified

judgment. The parties to the divorce acquired interests in property in consideration for money or money's worth.

The United States maintains in its brief in support of its Motion for Summary Judgment, that under Massachusetts law a marriage is analogous to a partnership. Wherein the exchange of partnership interests are of business interests, the United States' position is not advanced by its argument but is undermined by same.

There is no rational basis for the United States to maintain that an exchange of marital rights does not meet the requirements of Section 6323. Section 6323 requires a person "for adequate and full consideration in money or money's worth, [to] acquire[s] an interest (other than a lien or security interest) in property..."

In <u>United States v. Byrnes</u>, 848 F.Supp. 1096 (D.R.I. 1994) the Court stated as follows:

> Section 6323 defines a purchaser as one who acquires an interest in property "for adequate and full consideration in money or money's worth." 26 U.S.C. section 6323(h)(6). The regulations promulgated pursuant to that section describe "[a]dequate and full consideration" as consideration that bears a "reasonable relationship to the true value of the interest in property acquired." 26 C.F.R. section 301.6323(h)-1(f)(3). The regulations also provide that "[a] relinquishment or promised relinquishment of ... marital rights is not a consideration in money or money's worth." 26 C.F.R. section 301.6323(h)-1(a)(3). **The validity of the latter provision is, at least, debatable.[Emphasis added]** Like the relinquishment of any other valuable legal right, a waiver of alimony has been recognized as consideration. See, e.g., <u>Law v. United States</u>, 83-1 US Tax Cas. (CCH) paragraph 13514, 51 A.F.T.R.2d (P-H) paragraph 83-1343 (N.D. Cal. 1982). Moreover, there is nothing in the statute indicating that Congress intended to exclude a bona fide waiver of alimony from the definition of consideration or to delegate to the Treasury Department the authority to create such an exclusion.

However, this court need not decide the validity of section
301.6323(h)-1(a)(3)...

The Regulation relied upon by the United States for its
position has been found to be "debatable" and cannot be justified
as an appropriate administrative view of the law. Accordingly,
the Plaintiff maintains that it is without weight in this matter.

By receiving the Home in exchange for other marital property
Ms. Johansen met the terms of the statute.

ii.  <u>Ms. Johansen Exchanged her Rights in a Judgment for
     Full Ownership in the Home.</u>

The unusual facts of this matter also provide a second basis
which supports the proposition that the settlement between Mr.
and Ms. Johansen met the requirements of Section 6323(1).

Here Ms. Johansen had received a judgment which granted her
rights in Mr. Johansen's pension. Under Massachusetts law she
thereby received the right to enforce that award. Please see
Massachusetts Rules of Domestic Procedure Rule 70 (which
incorporates by reference Rule 70 of the Massachusetts Rules of
Civil Procedure.) Ms. Johansen acted upon those rights and
brought Mr. Johansen before the Probate Court on a Complaint for
Contempt.

Mr. Johansen placed great value in his pension and Ms.
Johansen wished to receive the Home. On the day of the Contempt
hearing a settlement was reached whereby the Complaint for
Contempt was dropped, Ms. Johansen's appeal was dropped and
propertiess exchanged. This transfer meets the requirements of
IRC § 6323(1) for a transfer for consideration.

15

Presumably, Ms. Johansen exchanged reasonably equivalent value for her transfer. Accordingly, the issue of whether Ms. Johansen is a purchaser for purposes of IRC § 6323 is a question of law for which there is no controlling precedent. Here, as Ms. Johansen's receipt of the property came about due to a settlement of not only her marital rights but an appeal of the Probate Court's decision, Ms. Johansen is a purchaser for the purposes of IRC §6323.

    4.  <u>Ms. Johansen is a Judgment Lien Creditor.</u>

A second exception provided for by IRC §6323 is for Judgment Lien Creditors.

In <u>United States v. Taylor</u>, 338 F.3d 947 (8th Cir. 2003), Francis Taylor worked as a pilot for Northwest Airlines ("Northwest") from 1966 through 1994. During his employment, Francis participated in a retirement plan, a stock plan, and a savings plan administered by Northwest. Francis retired from Northwest in September of 1994, at which time he filed for divorce from Mary, his wife of more than thirty years. In October of 1994 a tax court concluded that Francis had not filed tax returns from 1981 through 1985. On May 1, 1995, the Service assessed deficiencies totaling approximately $984,310 (including penalties and interest) for those tax years. On July 28, 1995, the Texas court entered a divorce decree and approved a marital settlement agreement. The agreement provided that "to settle all obligations of the marriage," Mary would receive a 90 percent interest in Francis's Northwest employee benefits proceeds. Also

in July, the court entered a purported qualified domestic
relations order (QDRO), directing the plan administrator to
distribute Mary's interest in the plan proceeds directly to her.
The court retained jurisdiction to amend or reform the order as
necessary to conform with plan requirements and qualify as a
QDRO.

In October of 1995, Northwest informed Mary and Francis that
the July QDRO did not qualify.

In December of 1995 and October of 1996 the Service filed
liens against the plan proceeds.

The QDRO was reformed twice by the state court to address
Northwest's concerns. Northwest finally accepted a QDRO in
January of 1997.

The Court in its holding stated as follows:

> We turn next to whether Mary became a judgment lien creditor
> under section 6323(a) within sufficient time to have
> priority over the IRS. An IRS lien attaches automatically on
> the date a penalty is assessed, 26 U.S.C. section 6322 (lien
> arises at time of assessment), and is enforceable as of that
> date against creditors except any "purchaser," "holder of
> security interest," "mechanic's lienor," or "judgment lien
> creditor," within the meaning of section 6323(a). If the
> creditor falls into one of these categories, then the IRS
> must provide adequate notice to establish the priority of
> its lien. See 26 U.S.C. section 6323(a); Rodeck v. United
> States, 697 F. Supp. 1508, 1511 (D. Minn. 1988) (as to
> section 6323(a) creditors, tax lien will have priority only
> if notice has been filed in accordance with section
> 6323(f)).

> A Treasury Regulation defines "judgment lien creditor" as
> follows:

> . . . a person who has obtained a valid judgment, in a court
> of record and of competent jurisdiction, for the recovery of
> specifically designated property or for a certain sum of
> money... A judgment lien is not perfected until the identity
> of the lienor, the property subject to the lien, and the

amount of the lien are established.

                    ...

A state law created lien's priority depends on when it attaches and becomes choate, and federal law will determine when the lien has acquired sufficient substance and becomes so perfected as to defeat a later federal tax lien. United States v. Pioneer Am. Ins. Co., 374 U.S. 84, 88 (1963). Liens are perfected, under the federal rule, when there is nothing more to be done to have a choate lien, that is, "when the identity of the lienowner, the property subject to the lien, and the amount of the lien are established." Id. at 89 (citations omitted). Here, Mary obtained a valid judgment from a Texas divorce court for 90 percent of Francis's plan proceeds creating an exclusive property interest in the plan proceeds for Mary. On the date the Texas court granted the DRO, Mary's identity was clear, the subject property was identified, and the amount (90 percent) was fixed.

Mary was not required to comply with any state law requirements for purposes of establishing lien priority over the IRS's interest in the plan proceeds. ERISA provides a mechanism for enforcing QDROs, and this mechanism supersedes any contrary state law. See U.S. Constitution art. VI, cl. 2,

                    ...

In this case, Northwest determined, within eighteen months of the date the first payment would have been made under the DRO, that the DRO, as modified, was a QDRO. Thus, Mary satisfied ERISA's requirements for alienating pension plan proceeds.

We further conclude that Mary's interest in the plan proceeds relates back to the date of the initial DRO. See Nelson v. Ramette, 322 F.3d 541, 544 (8th Cir. 2003).

The judgment in the Johansen's divorce entered and the Home was transferred eight months prior to the Service's filing of a Notice of Tax Lien. Ms. Johansen took the Home free of any Federal Tax Lien.

   i.   The Recording of the Deed Was All that Was Required
        Under Massachusetts Law and the Internal Revenue Code
        to Meet IRC § 6323.

Massachusetts General Laws Chapter 208 Section 34 governs the division of property in a divorce. It states:

18

Upon divorce or upon a complaint in an action brought at any time after a divorce... In addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other...

Massachusetts General Laws Chapter 208, §34A states as

follows:

Whenever a judgment for alimony shall be made in a proceeding for divorce directing that a deed, conveyance or release of any real estate or interest therein shall be made such judgment shall create an equitable right to its enforcement, subject to the provisions for recording of notice in section fifteen of chapter one hundred and eighty-four, in the party entitled thereto by the judgment, and if the judgment has not been complied with at the time the judgment of divorce becomes absolute, and is thereafter recorded in the manner provided by section forty-four of chapter one hundred and eighty-three, then the judgment itself shall operate to vest title to the real estate or interest therein in the party entitled thereto by the judgment as fully and completely as if such deed, conveyance or release had been duly executed by the party directed to make it....

Massachusetts General Laws Chapter 208 § 21 states:

Judgments of divorce shall in the first instance be judgments nisi, and shall become absolute after the expiration of ninety days from the entry thereof, unless the court within said period, for sufficient cause, upon application of any party to the action, otherwise orders. After the entry of a judgment nisi, the action shall not be dismissed or discontinued on motion of either party except upon such terms, if any, as the court may order after notice to the other party and a hearing, unless there has been filed with the court a memorandum signed by both parties, wherein they agree to such disposition of the action.

In the present matter, there is no dispute that the Amended Judgment was entered on December 24, 2001 and that the deed to the Home was executed on January 4, 2002 (the "Deed"). The Plaintiff met the requirements to receive the Home established by Massachusetts law.

Internal Revenue Code Section 6323 exempts transfers from

the attachment of an existing but unfiled federal tax lien if its requirements are met.

Internal Revenue Regulation 301.6323(h)-1(g) states:

The term "judgment lien creditor" means a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved. A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established. Accordingly, a judgment lien does not include an attachment or garnishment lien until the lien has ripened into judgment, even though under local law the lien of the judgment relates back to an earlier date. If recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property, a judgment lien under such local law is not perfected with respect to real property until the time of such recordation or docketing. If under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved. The term "judgment" does not include the determination of a quasi-judicial body or of an individual acting in a quasi-judicial capacity such as the action of State taxing authorities.

The Plaintiff meets the first requirement of Regulation 301.6323(h)(1)-(g) as she is "a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property..."

The remaining test which is required to be a Judgment Lien Creditor for a specifically designated property is established in the third to last sentence of the regulation. (The other provisions of Regulation 301.6323(h)(1)-(g) speak to judgments

20

for money[3]). The third to last sentence states "If recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property, a judgment lien under such local law is not perfected with respect to real property until the time of such recordation or docketing."

Massachusetts General Laws Chapter 183 § 4 states:

A conveyance of an estate in fee simple, fee tail or for life, or a lease for more than seven years from the making thereof, or an assignment of rents or profits from an estate or lease, shall not be valid as against any person, except the grantor or lessor, his heirs and devisees and persons having actual notice of it, unless it, or an office copy as provided in section thirteen of chapter thirty-six, or, with respect to such a lease or an assignment of rents or profits, a notice of lease or a notice of assignment of rents or profits, as hereinafter defined, is recorded in the registry of deeds for the county or district in which the land to which it relates lies.

Therefore under Massachusetts General Laws Chapter 183 § 4, a recording of a deed is necessary before "a judgment becomes effective against third parties acquiring liens on real

---

[3]    The Defendant argues at length relative to the issue of "choateness". Each of the precedents relied upon by the Defendant relate to competing money judgments. Should the Court determine that the issue of choateness is relevant to this matter, the Probate Court's judgment establishes the identity of the lienor, the property subject to the lien, and the amount of the lien. The requirement that the "amount of the lien" strongly supports the contention that this regulatory requirement is specific to money judgments. Should this provision be read expansively, the amount of the lien is determined by the reference to the subject realty. Further, the Defendant's discussion relating to whether any requirement that the lien be "choate" is without relevance to this matter as the Plaintiff has met the requirements of the Service's regulations by the filing of the deed prior to the filing of the Notice of Federal Tax Lien. At the time of the filing of the Notice of Federal Tax Lien, there was not a competing lien for which a determination of "choateness" was required.

property."[4]

The remainder of the third to last sentence requires that a judgment lien (presumably as defined under the regulation) "under such local law is not perfected with respect to real property until the time of such recordation..." Therefore to have a perfected judgment lien (as defined by the subject regulation) perfection occurs at the time of the filing of a deed.

Here there is no dispute that the Notice of Federal Tax Lien was filed subsequent to the Deed. The Deed is therefore superior in right to any claim of the Defendant.

5.    The Transfer of the Home was Not a Fraudulent Conveyance.

In its Summary Judgment Memorandum the Defendant discloses that it is relying on Massachusetts' G.L. c.109A, §6 in alleging that a fraudulent transfer occurred.

G.L.c. 109A, §6 states:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation **and** [Emphasis added] the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

---

[4]    Neither G.L.c. 208 Sections 34 or 34A specifically require such a recording. There are no apparent holdings which exempt a judgment awarding property from G.L.c. 183 § 3. Accordingly, the Plaintiff has made her argument assuming that G.L.c. 183 § 3 must be met to establish priority. The Plaintiff, to the extent allowed by law, maintains the right to argue that no such filing is required.

Therefore to have a basis in law for its position the Defendant must have a basis for maintaining that the Home was not transferred for reasonably equivalent value.

As has been extensively discussed, the conveyance resulted from the Order of the Massachusetts Appeals Court which overturned the Probate Court's ruling that the subject property should be sold to pay Mr. Johansen's outstanding taxes and under a statutory scheme which requires equitable distribution.

In its prior memorandum's the Defendant relied principally on two holdings of the United States Bankruptcy Court. Accordingly those precedents will be addressed herein.

The first citation relied upon by the Defendant is In Re Pilavis, 233 B.R. 1 (Bankr. D.Mass. 1999).

In Pilavis the Court stated as follows:

> As a result, the first inquiry must be whether the transfer of Debtor's interest in the Medford Property to Defendant was fraudulent because made "without receiving a reasonably equivalent value in exchange therefor." Mass.Gen.Laws ch. 109A, § 6(a). This is the same test which applies under 11 U.S.C. § 548(a)(1)(B).
> Debtor and Defendant assert that the consideration for the transfer was adequate as it arose in the context of their divorce and in termination of marital rights. Plaintiff responds that the divorce, having been granted to non-domicilliaries in the Dominican Republic, is not a true divorce and need not be respected by this Court. Judge Yacos addressed this issue in Harman v. Sorlucco (In re Sorlucco), 68 B.R. 748, 752 (Bankr.D.N.H.1986):

> > [T]his case presents the dilemma of trying to apply fraudulent transfer concepts normally applied in commercial settings to the noncommercial context of a divorce proceeding. In the latter context, various subtle and inchoate "property rights" exist between the marital parties but are not clearly defined or actually determined until the event of dissolution of the marriage occurs.

He continued and established the standard whereby the adequacy of consideration would be tested in the domestic relations arena:

> It must be shown that the property-division was the result of arms-length bargaining in the light of the likely range of distribution that the divorce court might order if the matter went to a contested trial. Settlements reached in the shadow of an imminent bankruptcy filing would raise a clear factual question as to the bona fides of such bargaining. 68 B.R. at 754.
>
> I join with other courts which have considered the problem in endorsing the analysis used by Judge Yacos. See, e.g., <u>Falk v. Hecker (In re Falk)</u>, 88 B.R. 957, 967 (Bankr.D.Minn.1988), affd 98 B.R. 472 (D.Minn.1989); <u>Webster v. Hope (In re Hope)</u>, 231 B.R. 403, 414-15 (Bankr. D.D.C.1999). Further, as Judge Eisenberg has noted, "in an intra-family transaction, the court places a heavier burden on the transferee to establish fair consideration for the transfer." <u>Pryor v. Fair (In re Fair)</u>, 142 B.R. 628, 631 (Bankr. E.D.N.Y.1992).
> While a property settlement can certainly constitute adequate consideration for purposes of UFTA, <u>Fair</u>, supra, <u>Road Runner Inn., Inc. v. Merrill</u>, 605 P.2d 776, 777 (Utah 1980), there was nothing "armslength" about the transactions here....
> I find that the transfer at issue here was a vain and misguided attempt to shelter the Medford Property from Plaintiff and Debtor's other creditors.

The second citation of the Defendant is <u>In Re Williams</u>, 159 B.R. 648 (Bankr.D.R.I. 1993). The holding in <u>Williams</u>, at page 663, adopted the <u>In Re Sorlucco</u> test. Thereby the <u>Williams</u>' court therefore limited its holding to matters where a trial was not held.

For the present matter, the Defendant's position is not advanced by the <u>Sorlucco</u> test as it is limited to those matters where the issue is what "the divorce court might order if the matter went to a contested trial." Here the divorce did go to trial and appeal.

Accordingly, the Defendant can point to no law which

24

supports the proposition that a Court can effectuate a fraudulent conveyance.

IV.  <u>Conclusion.</u>

The Plaintiff's Request that title be cleared and the nominee lien be invalidated are entirely supported by fact and law. The United States' Counterclaims cannot stand as a matter of law and are properly dismissed.

Marlene Johansen
by her attorney

<u>/s/ Timothy J. Burke</u>
Timothy J. Burke
BBO# 543837
400 Washington Street
Braintree, MA    02184
(781) 380-0770

Dated: August 1, 2005

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon each attorney of record via first class mail, postage prepaid on August 1, 2005 to the following counsel of record:

Stephen Turanchik
Trial Attorney, Tax Division
Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C.    20044


Sean McMahon
Meilman & Costa
70 Wells Avenue
Suite 200
Newton, MA    02459

<u>/s/ Timothy J. Burke</u>
Timothy J. Burke

25