UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| MARLENE JOHANSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| Counterclaim Defendant, | ) | |
| | ) | Case No. 04-11789-RCL |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant, | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL CITY MORTGAGE CO., | ) | |
| and TIMOTHY BURKE, | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

_____ )

UNITED STATES' OPPOSITION TO
MARLENE JOHANSEN'S MOTION FOR SUMMARY JUDGMENT

The United States of America, through undersigned counsel, opposes Marlene Johansen's

Motion for Summary Judgment.


A.  Response to Marlene Johansen's Statement of Facts Not in Dispute

The United States contends that the following numbered facts as set forth by Marlene

Johansen ("Marlene") are not undisputed.  Marlene has set forth the following facts as

undisputed but the United States cannot agree that they are undisputed.  While we believe that

these facts are not material to the parties' motions for summary judgment if the United States

1258372.1

does not dispute the Plaintiff's Statement of Uncontested Facts, they will be deemed admitted for

purposes of these motions.  See Local Rule 56.1.

14.    On December 24, 2001 (the continued date of the Contempt Hearing) Mr.and
       Mrs. Johansen, by way of their counsel, entered into extensive negotiations
       relative to resolving their dispute.

The United States disputes that the negotiations were "extensive" and contends that Ralph

Johansen's testimony which was cited for this proposition does not bear out paragraph 14.  In

fact, Ralph Johansen ("Ralph") testified as follows (Ralph Tr. p. 66) :

       Q: Do you know if the discussions between the lawyers took place in one day over
       a course of weeks or do you know how the negotiations worked?
       A: I don't know the answer to that.  I know there were discussions.
       Q: Mm-hm.
       A: I don't know the length of time it took them to do that...

There is no dispute that there were negotiations, but Ralph's testimony cannot be used to support

the statement that "extensive" negotiations occurred.

15.    On December 24, 2001 Ms. Johansen had a legal right to a portion of Mr.
       Johansen's pension. (Ralph Tr.p.67, lines 16-21).

The United States does not contest that Marlene had a right to Ralph's pension fund because they

were married, but Statement 15 is a legal conclusion and not a "fact" to be included in Marlene's

"Statement of Uncontested Facts."

19.    The Johansen's [sic] believe the deal was fair.  (Ralph Tr. 109, lns 2-9)

The record does not support this contention.  According to Ralph's testimony, he thought it was

1258372.1

fair.  Marlene did not.     She testified as follows (Marlene Tr.pp.85-87) (See Ex. 19,

Supplemental Testimony of Marlen Johansen)1/  :

> Q.  Mrs. Johansen, before we had taken a break, we were taking a look at Exhibit Number 3, and the last two pages are the agreement that was entered into between you and your husband or between  your Counsel and his Counsel on your behalf. You  had said you had two --
> A.   Well, there were a couple of things.
> Q.  A couple of concerns, have you had an opportunity to review the agreement?
> A.  Yes.
> Q.  And what were those concerns that you had?
> A.  The first one was the four hundred dollars, and the other one was me having to give up, what does it say here.  Hold on a second.
> Q.  Which paragraph number?
> A.  Oh, 5.
> Q.  And what was your problem with Paragraph 5?
> A.  That I had to waive all claims to that.  I did not feel that was accurate.  I did not want to agree to that.  And the other thing that I had brought up, and I don't see it written in here, was health insurance, because I had wanted some different wording in the paragraph of the old reworded, and it was not put in here.
> Q.  Just to clarify, by the old you mean the Judgment of Divorce Nisi?
> A.  Right, Exhibit 2.
> Q.  What was your issue with the four hundred dollars?
> A.  I had wanted it to go back to the original 515, and that's what, before we went to court, I had said what I wanted, and that plus I didn't want to give up the pension, and I wanted my insurance situation straightened out.
> Q.  And why did you eventually agree to those terms you didn't like?
> A.  We went back and forth, back and forth. We were there all day, and my attorney said this is the best you're going to get.  You have to sign it, and I'm still balking, I don't want to sign it. And actually, I was leaving to go visit my daughter who lives in Arizona.  He said, hey, we can come back tomorrow.  He knew -- they all knew I was leaving the next day to go to Arizona.  I felt I was pressured, and I did not want to sign it.  I felt pressured.
> Q.  Do you feel like you signed it under duress?
>     MR. BURKE:  Objection.
> A.  I don't know if it's a hundred percent duress, but it was like take what you have.  It's better than nothing.

One thing is clear from Marlene's testimony: she did not like the arrangement entered into on

---

1/   Exhibit number 19 is used as a continuation of the exhibit numbers in the United States' Motion for Summary Judgment.

1258372.1

December 24, 2001 and she did not consider the deal to be fair.   There is no dispute that Ralph

Johansen considered the deal to be fair.


30.    Ralph Johansen did not pay any expenses of the Home after its transfer.

Marlene does not cite anything for this proposition, and therefore, the United States cannot agree

to the statement as an uncontested fact.  Local Rule 56.1 provides that motions for summary

judgment shall include a concise statement of the material facts of record


B.    Response to Marlene Johansen's Recitation of Procedural History

In reciting the procedural history, Marlene has stated that the United States

counterclaimed against her counsel and her mortgage holder.  Marlene stated that the claim

against the mortgage holder, National City Mortgage, Co. ("National City") has been dismissed.

This is incorrect.  The United States has entered a stipulation with National City Mortgage, Co.,

whereby the parties agreed that National City is entitled to priority over the federal tax lien.

National City still maintains an interest in this case in the event that the United States forecloses

and sells the Subject Property.

Further, To the extent that Marlene refers to Timothy Burke as "counsel" with regard to

the United States' counterclaim against him, that moniker is incorrect.   Timothy Burke, has been

named in the United States' counterclaim because he holds a mortgage on the property, not

because he is counsel for Marlene, although he may have obtained his mortgage in connection

with his representation of Marlene.

1258372.1

C.    Response to Marlene's Substantive Legal Claims

1. *The United States Does Not Contend That Marlene is the Nominee of Ralph*

Marlene asserts that the "United States' allegation that Ms. Johansen is holding property

as a nominee for her for her ex-husband is unsupported by any evidence." (Marlene's Memo of

Law p.6).    In its Motion for Summary Judgment the United States does not argue that Marlene

holds title to the Subject Property as the nominee of Ralph.  Therefore, this entire argument in

inapposite.2/


2.    *Marlene Does Not Qualify as "Purchaser" Under 26 U.S.C. §6323*

*a) The Treasury Regulation Defining a Purchaser is Valid*

Marlene is not a purchaser under §6323 because she only parted with a marital right

which does not qualify as consideration for money or money's worth under the Internal Revenue

Code §6323.  Internal Revenue Code section 6323(h)(6) defines a "purchaser" as follows:

> The term "purchaser" means a person who, for adequate and full consideration in
> money or money's worth, acquires an interest (other than a lien or security
> interest) in property which is valid under local law against subsequent purchasers
> without actual notice.

The Treasury Regulation interpreting section 6323(h)(6) states that, for purposes of tax liens, "[a]

relinquishing or promised <u>relinquishment of ... marital rights is not a consideration in money or

money's worth</u>." (emphasis added) 26 C.F.R. § 301.6323(h)-1(a)(3)(1992)  See Herzog v. United

States, 201 F.3d 444 (9th Cir. 1999); see also Harris v. United States, 764 F.2d 1126 (5th Cir.

---

2/    In support of her argument, Marlene states in her Memorandum of Law, "Ms. Johansen pays all of the expenses
for the Home.  Both Mr. and Ms. Johansen testified at their depositions that Ms. Johansen was not holding the Home
for Mr. Johansen."  These "facts" appear nowehere in Marlene's Statement of Uncontested Facts.

1258372.1

1985)("the division of property by the divorce court was a division of marital property rights, not a sale"); In re Suarez, 182 B.R. 916 (Bankr. S.D.Fla.,1995); United States v. Brynes, 848 F.Supp. 1096, 1098 (D.R.I. 1994).   Kenney v. United States, 329 F.Supp.2d 1193 (N.D.Cal.2004).

Marlene does not make a frontal assault upon the validity of Treas. Reg. §301.6323(h)-1(a)(3), but rather contends that "it is debatable" and "without weight in this matter."   There is no merit to her contention.  It is well settled that Treasury Regulations must be sustained unless "unreasonable and plainly inconsistent" with the statute.  UNUM Life Ins. Co. v. United States, 897 F.2d 599, 610 (1st Cir. 1990).   Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law.  See United States v. Cleveland Indians Baseball Co.,  532 U.S. 200, 217 (2001).

The regulation's approach plainly is a reasonable construction of § 6323. Were the rule otherwise, it would encourage couples, only one of whom owes back taxes, to place property beyond the reach of the federal tax lien by conveying it to the nondelinquent spouse, in return for a relinquishment of some type of marital rights.  The nondelinquent spouse would then be positioned to claim that she was a "purchaser" with an interest superior to that of an unfiled federal tax lien.  The rule of Treas. Reg. § 301.6323(h)-1(a)(3) is a reasonable interpretation of the statute and prevents abuse.  The regulation may also prevent divorces for the purpose of protecting assets.

This rationale is illustrated in the facts of this case. Ralph Johansen was indebted to the Internal Revenue Service in an amount of more than $170,000 in December 2001, while Marlene was not.  The two primary assets of the marital estate were: (1) the marital residence and (2)

1258372.1

Ralph's right to received payments from his pension in the future.   Marlene and Ralph divided

the assets whereby Marlene receives the residence and Ralph will obtain the right to the entire

pension fund.  If Marlene's relinquishment of her marital rights in Ralph's pension qualified as

"consideration in money or money's worth" the IRS would be prejudiced because it would lose

the right to immediately seize and collect from the proceeds of the sale of the house and instead

have to wait until Ralph had the right to receive payments under his pension fund to collect.

Allowing for the expeditious collection of federal income taxes provides a rational basis for the

IRS to have issued the regulation.

Moreover, this longstanding regulation has been applied by the courts to deny "purchaser"

status to spouses who received property in return for the relinquishment of marital rights.  For

example, Harris v. United States, 588 F. Supp. 835, 838 (N.D. Tex. 1984), aff'd, 764 F.2d 1126

(5th Cir. 1985), a Texas case, where the delinquent taxpayer's former wife contended that a

federal tax lien respecting his taxes was subordinate to her interest in the marital residence,

which was awarded to her incident to divorce, the court applied the regulation, reasoning that the

wife "acquired the residence in exchange for relinquishing her marital rights and therefore is

excluded from the operation of Section 6323(a) by the regulations quoted above."  The Fifth

Circuit affirmed.  It noted that the wife contended that any tax lien was "subordinate to her

interest in the property because was not filed until she 'purchased' it through the divorce

proceeding.  The district court rejected this argument, concluding that the division of property by

the divorce court was a division of marital property rights, not a sale.  We agree."  764 F.2d at

1129.  The court reasoned that the fact that a disproportionate exchange of marital property upon

divorce may be considered a taxable event does "not convert it into an exchange 'for adequate

1258372.1

and full consideration in money or money's worth.'" Id., quoting I.R.C. § 6323(h)(6).

So, too, in Simpson v. United States, 63 A.F.T.R.2d 89-1132, 1989 WL 73212 (M.D. Fla. 1989), the court noted that the regulation "[s]pecifically excluded" the relinquishment of marital rights from the definition of "money and money's worth." It concluded that "because the subject real property was awarded to Simpson to compensate her for relinquishing her marital rights, she is not a purchaser of the subject real property for money or money's worth entitled to the protections of 26 U.S.C. § 6323." Id.

To be sure, the regulation's approach has been questioned. See Suarez v. United States, 182 B.R. 916, 921 (S.D. Fla. 1995) (terming regulation's validity "at least debatable" respecting the waiver of alimony due to its having been recognized as consideration in other contexts, but nevertheless applying regulation to deny "purchaser" status where there was no mention of consideration or request for alimony); United States v. Brynes, 848 F. Supp. 1096, 1098 (D. R.I. 1994)(finding regulation's validity "is, at least, debatable," but declining to reach the issue and finding that wife was not a "purchaser" because her waiver of alimony was contingent upon husband's fulfillment of a condition not yet satisfied). It should be noted, however, that both Suarez and Brynes questioned the regulation only as applied where the claimed consideration was a waiver of alimony or support, not where a property division is at issue, as here.

> b) Marlene has Failed to Prove that She Provided "Adequate and Full Consideration"

Even assuming that Marlene prevailed on her argument that the regulation is invalid, and relinquishment of a marital right was consideration in money or money's worth, she had failed to

1258372.1

establish that her relinquishment was for adequate and full consideration.   The burden of proving

that the claimant gave "adequate and full consideration in money or money's worth" for the

subject property is on the claimant.  See <u>Alexander Hamilton Life Ins. Co. of America v.</u>

<u>Government of the Virgin Islands</u>, 757 F.2d 534, 541 (3d Cir.1985) (finding that "the burden of

proof in quiet title action rests with the complainant as to all issues which arise upon the essential

allegations of his complaint) <u>see also</u>" <u>S.T.V. Engineers, Inc. v. Ash</u>, 86-1 USTC ¶ 9352, 57

A.F.T.R.2d 86-1137 (E.D.Pa.), aff'd, 806 F.2d 251 (3d Cir.1986)(plaintiff bears the burden of

proving that she fits the statutory definition of "purchaser").  The question of adequacy of

consideration typically turns on factual issues. See <u>Schoppert v. CCTC Int'l, Inc.</u>, 972 F.Supp.

444, 447 (N.D.Ill.1997).

     Marlene has not produced sufficient evidence for this Court to find that the

relinquishment of her rights in Ralph's pension fund were adequate and full consideration for the

transfer of the subject property.   Marlene does not place a value on Ralph's pension,3/ rather

she relies on the fact that the Johansens' divorce attorneys discussed settlement and that Ralph

thought the transfer was fair.  In fact, Marlene implicitly acknowledges that she does not have a

value for Ralph's pension fund.  On page 16 of her memorandum of law, she states,

"Presumably, Ms. Johansen exchanged reasonably equivalent value for her transfer."  If Marlene

is presuming that the value is equivalent, then she does not know whether the transfer were for

equivalent values.  At the very least Marlene has not satisfied her burden by showing that she

provided adequate and full consideration for Ralph's one-half share of the Subject Property.

---

3/   The Probate Court in the divorce proceedings did not put a value on Ralph's pension, either.

1258372.1

*c) Marlene's "Judgment Rights" are the Same as Her Marital Rights*

Marlene argues that she had rights to Ralph's pension because of the Judgment of

Divorce Nisi entered on March 21, 2001. She claims that she gave up the rights under that

judgment (as distinct from her marital rights) in exchange for Ralph's share of the Subject

Property. The contention is without merit. Marlene did not obtain any rights as a result of the

judgment. The judgment was the Court's determination of the rights and responsibilities of the

parties, but new rights did not spring into existence when the judgment was entered.

To be sure, the judgment provided Marlene with additional enforcement abilities: the

ability bring an action for contempt for failing to obey a court order. Money judgments allow

creditors to obtain executions, but these post-judgment remedies are not rights. Further, Marlene

does not contend that she has given up her post-judgment remedies for the transfer of Ralph's

one-half interest in the subject property. Put simply, the only rights that Marlene relinquished

were her marital rights in Ralph's pension. Because those marital rights are not "consideration

in money or money's worth" Marlene does not qualify a purchaser under §6323(h)(6).


3.    *Marlene Does Not Qualify as a Judgment Lien Creditor*

      *a) Marlene Did Not Have Lien*

Marlene contends that the divorce judgment in combination with the recordation of the

deed to the Subject Property qualifies her as "judgment lien creditor" under 26 U.S.C. §6323.

As discussed in the United States' Motion for Summary Judgment, Marlene is not a judgment

lien creditor because she never held a "judgment lien." To decide if Debtor has a "judicial lien,"

the Court must first decide if the Modification Order, dated December 24, 2001, created a "lien"

1258372.1

at all.  See <u>In re Suarez</u>, 182 B.R. 916, 922 (Bankr. S.D.Fla. 1995)(<u>citing</u>  In re Elkhatib, 108

B.R. 650 (Bankr. N.D.Ill.1989).  Black's Law Dictionary defines a "lien" as a claim,

encumbrance, or charge on property for payment of some debt, obligation or duty.  See Black's

Law Dictionary, (6th ed. 1990).   A divorce decree has the effect of either extinguishing or

reordering pre-existing property interests of the parties and creating new interests in the place of

the old.  <u>In re Suarez</u>, 182 B.R. 916, 922 (Bankr. S.D.Fla. 1995)(<u>citing</u> <u>In re Wells</u>, 160 B.R. 726

(Bankr.N.D.N.Y.1993)).

The division of property in Massachusetts in a divorce does not create a lien, but rather

the re-ordering of marital interests.   Massachusetts General Law ch. 208 §34 provides, "Upon

divorce ... the court may assign to either husband or wife ... all vested and nonvested benefits,

rights and funds accrued during the marriage and which shall include, but not be limited to,

retirement benefits ..."  The purpose and effect of Mass. G.L. ch. 208 § 34 is to provide "the

equitable division of the property interests of partners in a marriage."  <u>Davidson v. Davidson</u>,

474 N.E.2d 1137, 1138 (Mass.App. 1985) .   Therefore, Marlene cannot assert that she had a

judgment lien.

The burden of proof rests with the Plaintiff to prove that he/she is a judgment lien creditor

when disputing a federal tax lien  See <u>TMG II v. United States</u>, 778 F.Supp. 37 (D.D.C. 1991)

which is consistent with the burden of proving that one is a "purchaser" under §6323(h)(6).  In

this case, Marlene has offered no evidence and no case law to support her contention that she

ever had a "lien" against the property.

Marlene cites to no Massachusetts law that gave her a lien against the Subject Property.

She cannot because, as discussed above, Massachusetts does not treat property settlements in

1258372.1

divorces in that context.  Rather, in Massachusetts the reordering of pre-existing property

interests of the parties does not create a "lien" at all. See e.g. Suarez, 182 B.R.916, 922 (Bankr.

S.D.Fla. 1995(relating to property divisions in Florida).  Therefore, Marlene did not have "lien"

and cannot qualify as a judgment lien creditor under §6323 to defeat the federal tax lien.

### b)  Marlene Johansen Did Not Perfect Her Claim as a Judgment Creditor

Even assuming that Marlene held a lien, it would not have been perfected.  Under

Massachusetts law, in order to perfect a judgment lien against real property, the creditor must file

an execution with the Registry of Deeds where the real property is located.  "A  Massachusetts

judgment alone is not sufficient to create a perfected and choate judgment lien." See Smith

Barney, Harris Upham & Co., Inc. v. Connolly, 887 F.Supp. 337, 345 (D.Mass. 1994).

Massachusetts General Laws ch. 236 §4 provides:

> If land, which was not attached on mesne process in the action in which the
> execution issued, is taken on execution, the officer shall forthwith deposit in the
> registry of deeds for the county or district where the land lies a copy of the
> execution with a memorandum thereon that the execution is in his hands for the
> purpose of taking the land of the defendant, and no such taking shall be valid
> against a purchaser in good faith, for value and without notice, before such copy is
> deposited.

In this case, there is no indication that Marlene obtained an execution, let alone recorded one

with the Registry of Deeds.  Therefore, she cannot claim that she perfected her judgment lien.

Marlene cites the case of Taylor v. United States, 338 F.3d (8th Cir. 2003) for the

proposition that like Mary Taylor, the Plaintiff in that case, she also qualifies as a judgment lien

creditor. The Taylor case is inapposite.  First, Mary Taylor, the ex-wife of the taxpayer, obtained

an order, in divorce proceedings, that she would receive a 90 percent interest in her ex-husband's

1258372.1

employee benefits proceeds.  The Eighth Circuit found Mary Taylor to have a choate judgment

(1) Mary's identity was clear, (2) the subject property was identified, and (3) the amount (90

percent) was fixed.  Marlene Johansen has not identified any property in her claim, nor does she

have a fixed amount on which to claim her security.  Additionally, the Eighth Circuit found that

Mary Taylor did not need to comply with state law requirements for perfecting her judgment

because ERISA provides a mechanism for enforcing QDROs, and this mechanism supersedes

any contrary state law.  Because Mary Taylor had satisfied the ERISA requirements, her interest

was perfected.  In this case, Marlene still needed to comply with state law requirements to perfect

a lien, assuming that even she even had obtained a lien.  In this case, Marlene Johansen cannot

avail herself of ERISA and failed to perfect any "judgment lien" against Ralph Johansen as she

did not file an execution with the appropriate Registry of Deeds.  Therefore, Marlene Johansen is

not a "judgment lien creditor" as defined by IRC §6323.

Marlene cites the Massachusetts General Laws chapter 183 §4 for the proposition that the

filing of a deed qualifies as perfecting a judgment lien.   Mass. G.L. 183 §4 provides:

> A conveyance of an estate in fee simple, fee tail or for life, or a lease for more
> than seven years from the making thereof ... shall not be valid as against any
> person, except the grantor or lessor, his heirs and devisees and persons having
> actual notice of it, unless it ... is recorded in the registry of deeds for the county or
> district in which the land to which it relates lies.

This section does not relate to the perfection of judgment liens.  This section relates to the

requirement that a deed must be filed in the local county's Registry of Deeds and not the

perfection of a judgment lien. Massachusetts G.L. ch. 236 §4, set foth above, details what is

necessary to perfect a judgment lien in Massachusetts.   Because Marlene did not obtain an

execution on her judgment or have it recorded with the Registry of Deeds, she could not have

1258372.1

perfected her judgment lien (assuming that she even had a lien).

### c) Marlene's Claim Is Not Choate

Even if Marlene Johansen's divorce decree were perfected, her claim would have to be choate in order to defeat the federal tax lien. A lien is inchoate if it is not specific or is not perfected. A competing, non-federal lien to be perfected must be definite in three respects:

(1)    the identity of the lienor,
(2)    the property subject to the lien, and
(3)    the amount of the lien.

See United States v. New Britain, 347 U.S. 81, 84 (1954); United States v. Pioneer American Insur. Co., 374 U.S. 84, 89 (1963).  Additionally to be choate, a lien must be definite at the critical time, and not merely ascertainable in the future by taking further steps.  Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 374 (1946).   Under facts similar to this case, the Court in In re Suarez, 182 B.R. 916, 922 (Bankr. S.D.Fla. 1995), stated:

> even if the Court determined the Final Order obtained in the divorce proceedings created a lien, it would not have the choateness necessary to allow it priority over the federal tax lien.  The fact that a lien was perfected before a federal tax lien was recorded does not necessarily entitle it to priority over the federal tax lien.  To enjoy priority, the previous lien also must be sufficiently choate under federal law." United States v. Brynes, 848 F.Supp. 1096 (D.R.I.1994); see also, United States v. New Britain, 347 U.S. 81 (1954). The concept of choateness relates to the specificity and identifiability of a lien.  Liens "may also be perfected in the sense that there is nothing more to be done to have a choate lien--when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." New Britain, 347 84.  Here the Final Order would not have the choateness necessary to allow it priority over the federal tax lien because the amount of the lien is not established. Nor could it ever be established since there is no debt to be secured by a lien, just the redistribution of an interest in property.

There is no debt owed from Ralph to Marlene because the Modification Agreement of December

1258372.1

24, 2001, merely re-ordered the property interests of Ralph and Marlene.   As such, there is no

"amount" due from Ralph to Marlene, and therefore, Marlene's claim against Ralph was not

choate.  Consequently, Marlene cannot qualify as a judgment lien creditor.

> 4.    *There is a Question of Fact as to Whether Ralph Fraudulently Conveyed the Subject Property to Marlene*

United States also possesses sufficient facts to establish that the purported conveyance of

Ralph Johansen's one-half interest in the Subject Property was fraudulent as to United States.

Massachusetts General Laws c. 109A, § 5(a)(1) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor ...

It is often impracticable, on direct evidence, to demonstrate an actual intent to hinder, delay or

defraud creditors.  See Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248,

1254 (1st Cir. 1991).  The determination is necessarily made on the basis of the "recognized

indicia or badges of fraud." Id.  In determining actual intent under Massachusetts fraudulent

conveyance law, consideration may be given, among other factors, to whether:

> 1) the transfer or obligation was made to an insider;
> 2) the debtor retained possession or control of the property transferred after the transfer;
> 3) the transfer or obligation was disclosed or concealed;
> 4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> 5) the transfer was of substantially all of the debtor's assets;
> 6) the debtor absconded;
> 7) the debtor removed or concealed assets;
> 8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> 9) the debtor was insolvent or became insolvent shortly after the transfer was

1258372.1

made or the obligation was incurred;
10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Among the more common badges of fraudulent intent at the time of a transfer are: (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and (5) retention by the debtor of the property involved in the putative transfer." Federal Deposit Ins. Corp. v. Anchor Properties, Inc., 13 F.3d 27, 32 (1st Cir.1994).   "The presence of a single badge of fraud may spur mere suspicion, the confluence of several can constitute conclusive evidence of an actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose." Max Sugarman Funeral Home, Inc. , 926 F.2d at 1254-55.

In this case, the following factors support a finding that the conveyance was made with the intent to hinder, defraud or delay the collection of his federal tax liabilities: (1) the conveyance was made to his wife, (2) before the transfer was made, the debtor was threatened with suit,4/ (3) from the perspective of the Internal Revenue Code, the value of the assets received by Ralph was not equivalent to the value of the assets exchanged, (4) the transfer occurred shortly after a substantial debt was incurred, and (5) Ralph was insolvent before and after the transfer. 5/   By transferring his interest in the Subject Property to Marlene, he has, at the

---

4/   See Exhibit 12 to United States' Motion for Summary Judgment, Notices of Tax Due Sent to Ralph.

5/   See Exhibit 20, attached to this Response, an Offer in Compromise, dated October 16, 2001, made by Ralph. On the last page of the Offer in Compromise, Ralph states, "As a result of hardships from an unstable marriage and the ensuing divorce proceedins [sic] which currently continue, I do not have sufficient assets to satisfy in full the amount

1258372.1

very least delayed his creditors.  In particular, Ralph has left himself with assets that will only be collectible in the future, i.e. when he starts to receive pension payments, if the statute of limitations on collection is still open at that time.

Additionally, the fact that a court determined that the property settlement was valid as between the parties to it does not prohibit a creditor from attacking the settlement as being fraudulent as to it.  See Snodgrass v. Baumgart, 974 P.2d 604 (Kan.App.1999); Filip v. Burucenciu, 129 Cal.App.4th 825 (2005);  Dowell v. Dennis, 998 P.2d 206 (Okla.Civ.App.Div. 1999); Glasscock v. Citizens National Bank, 553 S.W.2d 411 (Tex.Civ.App.1977)( creditors could not be bound by a divorce decree because the court in a divorce action has no authority to disturb a creditor's lawful rights against a party to the divorce or to award property to the creditor's prejudice).

Because, we believe, it is not necessary for the United States to establish a fraudulent conveyance to entitle the United States to foreclose and because questions of fact regarding the validity of the transfer may be present, the United States has not moved for summary judgment on the fraudulent conveyance issue.   However, because there are issues of fact regarding the potential fraudulent transfer of Ralph's one-half share of the Subject Property to Marlene, Marlene is not entitled to summary judgment.

---

of my federal tax liability."

1258372.1

Conclusion

Because Marlene Johansen does not qualify as a purchaser or a judgment lien creditor she

does not have an interest in one-half of the Subject Property that is superior the federal tax lien

and the United States is entitled to summary judgment.  In any event, because there are issues of

fact with regard to whether Ralph fraudulently conveyed his one-half interest in the Subject

Property, Marlene would not be entitled to summary judgment even if it is determined that

Marlene otherwise qualified as either a purchaser or judgment lien creditor.


MICHAEL J. SULLIVAN
United States Attorney

/s/ Stephen J. Turanchik

STEPHEN J. TURANCHIK
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55 Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6565
stephen.j.turanchik@usdoj.gov

1258372.1

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing United States' Opposition to

Marlene Johansen's Motion for Summary Judgment has been made upon the following by depositing

a copy in the United States mail, postage prepaid, this 9th day of August, 2005:

Timothy J. Burke
400 Washington Street, Suite 303
Braintree, MA 02184

D. Sean McMahon
Meilman & Costa
70 Wells Avenue, Suite 200
Newton, MA 02459

/s/ Stephen J. Turanchik

STEPHEN J. TURANCHIK
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6565